# Richmond

## New Bay Shore Corporation v. Alberta Lewis.

March 10, 1952.

Record No. 3885.

Present, All the Justices.

The opinion states the case.

*Montague, Ferguson & Holt,* for the plaintiff in error.

*Ralph T. Baker* and *Sands, Marks & Sands,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Alberta Lewis, hereinafter referred to as plaintiff, instituted this action to recover damages for personal injuries, sustained while riding on a merry-go-round owned and operated by New Bay Shore Corporation, hereinafter referred to as defendant. The jury returned a verdict for plaintiff in the sum of $1100, upon which judgment was entered. From this judgment defendant obtained this writ of error.

Plaintiff moved to dismiss the writ on the ground that the transcript of the evidence, as certified by the trial judge, was incomplete, and did not include all the evidence introduced.

Final judgment was entered on December 23, 1950. Defendant gave the required written notice that on January 20, 1951, it would present a transcript of the evidence to the trial judge for his certification. Neither litigant employed a court reporter. Counsel for the respective parties made separate statements of the testimony in narrative form and presented them to the trial judge. Counsel were unable to agree on what constituted a true statement of the evidence. While the judge was considering these separate versions of the testimony, defendant submitted to him a stenographic transcript of the greater part of the testimony which had been taken and transcribed by a stenographer who was present in the courtroom during the trial. The judge decided that this transcript, in question and answer form, so far as it went, was more accurate than the statement of the testimony in narrative form submitted by counsel for the parties. He made numerous corrections, additions and deletions, and on February 10, 1951, certified the stenographer's transcript, the deposition of one witness, and the testimony of another witness in narrative form, to be

"a true and correct transcript and statement of the testimony and proceedings during the trial * * *."

Plaintiff interposed numerous objections to the certification of the transcript and statement of the testimony, all of which were overruled. She incorporated the grounds of her six exceptions to the ruling of the trial court in a bill of exceptions, which was signed by the judge on February 13, 1951. The grounds of exception, so made a part of the record, are: (1) the transcript of the evidence was prepared from notes made by a person not qualified as a reporter, who was seated approximately half way to the rear of the courtroom "and not in position to hear all of the testimony given by the several witnesses;" (2) that defendant admitted that the stenographer "failed to take down and transcribe any of the evidence of some of the witnesses, and that she failed to take down and transcribe portions of the testimony of other witnesses;" (3) "that the transcript of the evidence in its present form shows on its face omissions by the stenographer which have not been supplied, omissions which have been supplied by the Court, and errors either in reporting or transcribing which are patent from the context;" (4) "that a whole series of questions and answers on cross examination of the witness E. L. Dabney, which series of questions and answers brought out graphically the bias and attitude of said witness, have been completely omitted in the transcript of the evidence;" (5) "that the language of numerous of the witnesses as reported and transcribed in its present form is different from the language actually used by" them, "and while the language as supplied in many instances states in a general sense the matters testified to by the witnesses it fails in numerous instances to carry the particular shades of meaning necessarily implied by the actual words used by the witnesses;" (6) "that the evidence as certified in its present form is partially in summary form and partially in transcribed question and answer form, and as such does not meet the requirements either as a certified transcript of the evidence or as a statement of fact."

Concisely stated, we have on the one hand a transcript and statement of the testimony certified by the trial judge to be true and correct, and on the other the same objections that were presented to the trial judge and by him overruled.

The transcript and statement consist of 59 typewritten pages

of the testimony of 9 witnesses, in question and answer form, and the testimony of one witness, Charles Williams, in narrative form.

An examination of the original transcript reveals that the stenographer did not hear the answers to many questions asked eight witnesses, and that the trial judge supplied many answers to the unanswered questions, and made other corrections and additions with pen and ink. The answers to seven of the many questions were not transcribed by the stenographer, or supplied by the trial judge.

At the bottom of page 44 of the original transcript of the cross-examination of Haley Elliott, a witness introduced by defendant, the following typewritten note appears: "This is as far as I could go in the morning session as I had used up the notebook." This note is deleted by a straight line drawn through every word and does not appear in the printed record. The last question asked this witness is one of the seven questions not answered. At this place in the printed record appears the following: "(Transcript not complete—Clerk)." Beginning on the next page, and continuing in regular order, is found the testimony, in question and answer form, of other witnesses, the deposition of Doctor Davis and the testimony of Charles Williams in narrative form. In all other respects the transcript and statement of the testimony appear to be consecutive, regular and complete. There is no proof before this Court that Haley Elliott was further examined, or that he gave any material testimony not included in the transcript.

Rule of Court 5:1, § 3, (e) and (f) (superseding the provisions of sections 8-332 and 8-333 of the Code) does not require evidence to be taken and transcribed by a stenographer. It may be so taken and transcribed, or it may be stated in narrative form, or both, as was done in this case. When testimony is stated in narrative form the exact language of the witness is seldom used.

Plaintiff contended before the trial judge (as she contends here) that the transcript did not include all of the cross-examination of the witness, E. L. Dabney. Dabney, a special police officer, in the employ of defendant, and on duty on the day of the accident, was called as a witness for defendant. His direct and cross-examinations comprise nine typewritten pages, and seem to be consecutive, regular and complete. If the transcript

and statement, as certified by the trial judge is correct, then plaintiff's statements are incorrect. There is nothing in the record to suggest that the trial judge was biased, or that he acted arbitrarily. A transcript of the testimony and other incidents of a trial, certified by the trial judge, is presumed to be correct and, in the absence of proof to the contrary, is binding upon this court.

The certification of a transcript or statement of testimony by a judge is a judicial act. When counsel for the respective parties are unable to agree on evidence to be included in the proposed transcript or statement, it is the duty of the judge to settle the conflicting views. In so doing, he may make reasonable additions, deletions, or changes, in order that the record may contain a fair statement of the facts.

"If the bill presented is not truthful or fair, the judge should alter it and make it such, or suggest what alteration should be made. Where such alteration can be made in the draft, or when necessary, he may require it to be redrafted in accordance with such suggestions; for he is not bound to sign a bill that is not true." *Page* v. *Clopton*, 30 Gratt. (71 Va.) 415; *Lancaster* v. *Stokes*, 119 Va. 149, 89 S. E. 85; *Powell* v. *Tarry*, 77 Va. 250; *Collins* v. *Christian*, 92 Va. 731, 24 S. E. 472; *Ault* v. *O'Brien*, 121 W. Va. 705, 6 S. E. (2d) 228; 8 Michie's Jur., Exceptions, Bill of, sec. 50, p. 60; Burks Pleading and Practice, Fourth Edition, Bills and Certificates of Exception, sec. 301, pp. 539-545.

Plaintiff does not present to this court any proof that material evidence was omitted from the transcript certified by the trial judge. She relies on the same objections as to the correctness of the transcript and statement of the testimony that she made to him. He, having heard the witnesses testify, and with three separate and distinct statements of the testimony before him, overruled her objections and certified the transcript and statement in its present form. The signature of a judge, without more, is his certification that the transcript and statement are authentic and correct. Rule 5:1, § 3, (f).

The irregularities, apparent on the face of the transcript, are insufficient to show any material omissions.

"If the record before us is not the correct record, it was the duty of the complaining party to institute proper proceedings for certification of the correct record. We must accept the

record as we find it." *Cartwright* v. *Grand Trunk W. R. R. Co.,* 288 Mich. 316, 284 N. W. 727.

In *Rincon Inv. Co.* v. *White* (Tex. Civ. App.), 83 S. W. (2d) p. 1090, an issue of fact arose as to whether a certain paper had been introduced in evidence. The court certified the evidence without including the paper. The appellate court, speaking to the point, said: " * * * we will not resolve the issue, in the face of a sharp controversy thereon between the parties, as to whether the statement of facts embraces all the evidence adduced upon the trial, but will indulge the presumption that the certificate of approval of the trial judge, attached to the statement of facts, that the same is a correct statement of facts, gives full verity to the document."

The facts in *Bristol Mick or Mack Stores* v. *Bristol,* 180 Va. 15, 21 S. E. (2d) 758, (one of the authorities upon which plaintiff relies) are quite different from the facts in the case now under consideration. Twenty-five witnesses testified in that case, the trial of which consumed five full days. Both litigants employed a court reporter to take the testimony. If the testimony had been transcribed it would have taken at least three weeks and would have comprised 1000 to 1200 pages. Appellant, instead of having the evidence transcribed as it was able to do, on the fifty-third day after judgment had the reporter read a portion of the testimony to him. He then attempted to state the evidence, on eighty pages, in narrative form, and on the fifty-seventh day, presented the same to the judge for certification. Appellees objected to the certification by the judge on the ground that the statement contained a very small part of the evidence and not enough to enable the court correctly to decide the case on its merits. On the fifty-ninth and sixtieth days, separate revisions of the statement were presented, to which appellees objected because they did not contain all the material testimony. The trial judge, over the objection of attorneys for both appellant and appellees, redrafted the statement, added 180 pages, and on the seventieth day, signed the transcript.

Appellees' objections were supported by the testimony of the court reporter and affidavits, all of which were made a part of the record. The motion to disregard the evidence, as certified by the trial judge, was sustained in the following language:

"The statutory requirement that the certificate must be

tendered or presented to the judge within the sixty day period has not been met. No proper certificate was presented to the judge within the sixty days. In fact such a certificate has never been tendered.''

In the present case the transcript and statement of the testimony were presented to the trial judge twenty-eight days after final judgment and were not certified until twenty-one days thereafter. Plaintiff had time and opportunity to present for certification any material evidence which was not included in the transcript and statement, as certified by the judge.

█ The burden of showing that the evidence, as certified by the trial judge, is incorrect or incomplete, is upon the complaining party. Plaintiff has not borne this burden. Her motion to dismiss which is in effect a motion to reject the transcript, is overruled.

Defendant's main contention is that the evidence failed to show the breach of any duty it owed the plaintiff and hence was insufficient to sustain the verdict of the jury. The testimony is in sharp conflict.

Bernard Gore, examined by plaintiff as an adverse witness, testified that on July 9, 1949, he was an employee of defendant and the operator of the merry-go-round. His duties were to collect tickets, operate the merry-go-round, see that patrons were seated on horses or in chairs during a ride, and ''to be careful about children and boys running around.'' The hobby horses were arranged in rows, three abreast, on a revolving platform, 12 inches from the floor. The duration of one ride was approximately 3 minutes. At the time of the accident there were from 8 to 12 patrons riding, two of whom were adults. The others were children from three to ten years of age. He strapped plaintiff's niece on an inside horse and told plaintiff that she must sit either on a horse or in a chair during the ride. Plaintiff complied with his request by mounting the middle horse, which was within twenty inches of the horse on which the child was seated. Before starting the merry-go-round he saw that all the patrons were seated and that no one was moving on the platform. After the ride had continued for approximately two minutes, he saw plaintiff get off the middle horse and stand on the platform ''and at that time I cut the speed of the merry-go-round. As I cut the speed, I put on the emergency brake and when I looked back she was stepping off the outside edge of the

moving platform.'' He brought the merry-go-round to a stop and notified the office that plaintiff had fallen.

Other witnesses for defendant corroborated Gore's testimony to the effect that plaintiff left her seat on the middle horse while the merry-go-round was in motion, attempted to mount the outside horse, and in so doing fell off the outer edge of the moving platform. Employees of defendant testified that after plaintiff fell they rendered assistance, summoned medical aid, and sent her to a hospital.

The evidence for plaintiff presents quite a different picture. Plaintiff testified that on July 9, 1949, she went on an excursion from Richmond to Bay Shore, a beach resort in Elizabeth City county. There she purchased from defendant a ticket for her five-year old niece and another for herself so that she could hold the child while riding on the merry-go-round. She seated her niece on the inside hobby horse, and when Gore took up her tickets, she was standing behind the horse holding the child. He did not strap the child to the horse, nor did he tell plaintiff that she must be seated during the ride. She did not take a seat on the middle horse, but continued to stand behind the horse holding her niece. Just before or at the time the ride began she saw several unidentified boys, seven or eight years of age, in front of her with their feet hanging over the heads of the horses. Soon after the merry-go-round started, the three boys got off these horses, ran on the moving platform, and mounted other horses. This was done several times. Finally, one of them, while running on the platform, struck her on the right side and knocked her off the inner edge of the moving platform ''right by the machine the boy was operating.'' She knew nothing thereafter until she regained consciousness in the hospital. Her injuries were painful and serious but not permanent, and caused her to lose ten days from work.

Helen Scott, a witness for plaintiff, testified that she went from Richmond to Bay Shore on the same excursion with plaintiff, though she was not in her immediate party. She asked one of defendant's employees if it was necessary to buy a ticket for herself since she intended to hold her three-year old daughter on one of the horses during the ride on the merry-go-round. She was informed that she would have to buy an adult ticket and a child's ticket, which she did. She seated her child on the outside horse, immediately behind the row on which plaintiff's niece was

seated, and diagonally across from her. She saw plaintiff standing behind the horse holding her niece. While the merry-go-round was in motion, she saw the three boys change horses and run from one to another several times. Then she saw one boy jump off a horse and "bump" into plaintiff and knock her off the platform and "she fell inside where the machinery was."

Defendant contends that the boys were running around on the moving platform and changing seats without its knowledge or consent.

Defendant's witness, Haley Elliott, was asked:

"Q. Was there any disorder or boisterousness or confusion that day on that particular ride?

"A. Kids were jumping and going on the way kids do."

Plaintiff's witnesses testified that the boys were not properly seated on the horses when the merry-go-round started. Immediately thereafter they began to move from one horse to another. The accident did not occur until the ride was nearly over. Four of defendant's employees had a clear, unobstructed view of the merry-go-round and its riders. If plaintiff and her witness observed the movement of the boys at the time they said they did, the jury had a right to believe that the employees of defendant saw, or should have seen, them in time to order them to return to their seats or stop the machine before the accident.

It is not denied that defendant, for the protection of riders on its merry-go-round, adopted two safety rules, namely: (1) to require all riders on the merry-go-round to be seated, and remain seated, during a ride; and (2) "to be careful about children and boys running around." According to plaintiff's testimony, defendant's employees failed to enforce either of these rules. Hence the jury had a right to find that defendant was negligent.

Defendant contends that it is not liable to plaintiff, because "it is contrary to the natural order of things to anticipate that a small child * * * between seven and eight years of age, would have the physical strength, the power or weight, to push or pump a fully grown and fully developed woman off the merry-go-round, were she exercising ordinary care for her own safety * * * ." The substance of this contention is (1) that the injury to plaintiff could not have been reasonably foreseen or anticipated and hence the negligence of defendant, if any, was not the

proximate cause, and (2) plaintiff did not exercise ordinary care and caution for her own safety.

It is a matter of common knowledge that a merry-go-round is maintained primarily for amusement or entertainment of children. While the platform of such a device is moving round and round, the hobby horses are going up and down. Children, five years of age and under, riding on such horses, are likely to fall unless they are securely fastened to the seat or attended and held by persons of more mature years. It is not easy for an inexperienced adult to maintain his equilibrium while standing on a revolving platform. It is more difficult to do so when at the same time such person is holding to a child seated on a horse going up and down. Under such circumstances, a slight push or "bump" may cause the person to lose his balance and fall.

Children from 7 to 10 years of age often act upon childish instincts and impulses. They are thrilled and excited when permitted to ride on merry-go-rounds. It is natural for them, unless prevented from so doing, to take chances, move about on the platform, and change seats, with little or no regard for their own safety, or for the safety of others. These facts required defendant to exercise that degree of care and caution to prevent injury to those invited upon its premises that a reasonably prudent person would exercise under the same or similar circumstances.

In order for defendant's negligence to be the proximate cause of plaintiff's injury, it need not have anticipated or foreseen the precise injury sustained, but it is sufficient if an ordinarily careful and prudent person ought, under the same or similar circumstances, to have anticipated that an injury might probably result from the negligent acts. *Scott v. Simms,* 188 Va. 808, 51 S. E. (2d) 250. The safety rules adopted by defendant, and its instructions to its employees, clearly indicate that defendant was aware of the potential dangers involved. Whether the negligence of defendant was the proximate cause of plaintiff's injuries was a question for the jury to determine. *Scott v. Simms, supra; Whitfield v. Cox,* 189 Va. 219, 52 S. E. (2d) 72.

Defendant's other contention is that plaintiff's evidence convicts her of contributory negligence as a matter of law. This contention is based upon two theories: (1) that plaintiff failed

to heed warning signs posted in conspicuous places near the merry-go-round forbidding patrons to stand during a ride; and (2) that plaintiff saw the boy running toward her in time to avoid the impact.

The warning signs do not prohibit patrons from standing on the revolving platform. They read:

"RIDE AT YOUR OWN RISK

DO NOT { STAND ON HORSES
CHANGE HORSES
GET ON OR OFF WHILE
RIDE IS IN MOTION"

The boys were violating these warnings but plaintiff was not. She did not knowingly violate any safety regulations adopted by defendant for the protection of its patrons. She was an invitee. She, with the implied consent of defendant, was standing on a platform, moving round and round at some speed, holding a child seated on a horse going up and down. She was not in position to maintain a perfect or normal equilibrium, or to move quickly one way or the other, or to change her hold from a moving to a stationary object as quickly as could be done under normal conditions. Under these circumstances, reasonable men may fairly differ as to whether plaintiff exercised reasonable care and caution for her own safety. This conclusion makes the question of contributory negligence an issue to be determined by the jury.

We find no reversible error in the record.

*Affirmed.*

Spratley, J., dissenting.