## Richmond

Allen Stewart Bridgeforth v. W. D. Gibbs, Sr., Adm'r, Etc.

June 13, 1966.

Record No. 6217.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

*Robert R. Merhige, Jr.* (*L. Paul Byrne; Bremner, Merhige, Byrne, Montgomery & Baber*, on brief), for the plaintiff in error.

*George S. Cummins* for the defendant in error.

Snead, J., delivered the opinion of the court.

W. D. Gibbs, Sr., administrator of the estate of William D. Gibbs,

Jr., plaintiff, instituted an action for damages against Allen S. Bridgeforth, Harriet M. Bridgeforth, and Billy E. Strickland. The motion for judgment alleged, among other things, that plaintiff's decedent had been killed when the automobile he was operating collided with a vehicle owned by Harriet Bridgeforth and driven by her son and agent, Allen Bridgeforth, in a negligent manner. It further alleged that Billy Strickland's negligent operation of a third automobile was a proximate cause of the collision between the Gibbs and Bridgeforth vehicles.

A jury trial was had on September 8, 1964. The court struck plaintiff's evidence as to defendants Strickland and Harriet Bridgeforth and entered summary judgment in their favor. Thereafter, the jury returned a verdict against defendant Allen Bridgeforth in the amount of $25,000. This verdict was subsequently set aside, however, on the ground that the jury had been erroneously instructed, and a new trial was ordered.

The new trial was had on March 23, 1965. At that time, Allen Bridgeforth was the sole defendant. At the conclusion of plaintiff's evidence, defendant rested and moved the court to strike plaintiff's evidence and to enter summary judgment in his behalf, but the motion was overruled and the case was submitted to the jury. A verdict was returned for plaintiff in the amount of $20,000. Whereupon, Bridgeforth moved the court to set aside the verdict on the grounds that it was contrary to the law and the evidence; that there was no evidence to support it; that the issue should not have been submitted to the jury, and that the jury had been improperly instructed. This motion was also overruled, and judgment was entered on the verdict. We granted Bridgeforth a writ of error. Neither Harriet Bridgeforth nor Billy Strickland is a party to this appeal.

The fatal accident occurred on October 19, 1963, at approximately 11:30 p.m. on Route 460 about one and four-tenths miles west of Blackstone in Nottoway county. The weather was clear; the hard-surfaced road was dry, and the speed limit was 55 miles an hour. At the scene the paved portion of the highway is 21 feet 6 inches wide and consists of one eastbound lane and one westbound lane which are divided by two white lines. The line on the westbound side is broken, but the line on the eastbound side is solid. There are shoulders on both the north and south sides of the highway. The north shoulder is 4 feet 6 inches wide, and the south shoulder is of sufficient width to permit a vehicle to park upon it. A private driveway, known as the Hawthorne driveway, is located

on the north side of the highway. It is perpendicular to, and leads into, the westbound lane. The highway is practically level at the place where it passes the entrance to the driveway, but there is a slight downgrade which begins almost immediately to the east and about 40 feet to the west. Three hundred seventy-five feet west of the driveway the road is 13 feet lower than it is at the driveway entrance, and 375 feet east of the driveway it is 7 feet lower. The road is straight immediately in front of the driveway and to the west, but at a point 159 feet east of the driveway there is a slight curve to the southeast.

Allen Bridgeforth, defendant, was operating his mother's 1958 Pontiac Catalina automobile in a westerly direction at a speed of 50 to 55 miles an hour. W. D. Gibbs, Jr., plaintiff's decedent, was operating a 1960 Ford Falcon in an easterly direction. Billy Strickland had been driving a 1957 Pontiac on Route 460, but he stopped the vehicle and backed it into the Hawthorne driveway. His car was standing still in the driveway facing south with its front end about 4 feet from the hard surface of the westbound lane when the Gibbs automobile and the Bridgeforth car collided.

Bridgeforth was called as an adverse witness by plaintiff. He testified:

"* * * I was going out of this curve and saw a set of headlights. At first it seemed like a glare. Then all of a sudden it appeared headlights coming down my side of the road. It was more to my left center than full head on, and I tried to turn to the right to avoid it and it was all over."

Bridgeforth was asked if he knew where the headlights came from, and he replied: "They came from the bottom. They just came up and—came up out of the bottom. Just rose up, you know. I didn't know where it came from. You know. It just rose up. I saw it for a few seconds and then was the accident." Bridgeforth stated that he was on his side of the road when the collision occurred and that he knew he was driving in the proper, westbound lane because he was "checking the white line."

Bridgeforth was injured as a result of the accident. He was taken to a doctor's office for treatment and while there he was briefly interviewed by Trooper Landers, the investigating officer. Thereafter, he discussed the accident with Landers on other occasions. Landers was asked:

"Q. What did he [Bridgeforth] say about his approach to the scene with regard to the curve down there in the road?

"A. The only thing I recall that he said was that he was on his side of the road as he approached the scene there, and that he met a vehicle with bright lights coming down his side of the road, and he veered to his right in an attempt to avoid the crash."

Plaintiff's decedent, W. D. Gibbs, Jr., was found unconscious behind the steering wheel of his car by Trooper Landers. He never said anything to Landers and died shortly after the collision as a result of the injuries he had sustained.

Strickland, the operator of the car which was at a standstill in the Hawthorne driveway, did not see the Bridgeforth and Gibbs vehicles collide, and he could not say whether either car was out of its proper lane. He did say, however, that he "must have heard" the crash; that the impact seemed to occur "a little bit" to his left [east of the driveway], and that as he looked up he saw "the '58 Pontiac's [Bridgeforth's] taillights strike my headlight." The Bridgeforth vehicle "just swirled around", making a half-turn in a counterclockwise direction, and its right rear fender struck the right front headlight of his vehicle. The impact was "[n]ot too hard", however, and did not jar his car "much". After the Bridgeforth car struck his automobile "[i]t went down the road, kind of just straight backwards and stopped and came to rest in the ditch."

Trooper Landers found the Bridgeforth vehicle parked on the north shoulder of the highway west of the Hawthorne driveway facing in an easterly direction. "It was badly wrecked." It "was damaged from the front all the way back, the full length of the car down the left side of the automobile. Driver's side." Its right rear was "very slightly damaged". The right rear tail lamps were broken, and there was a dent on the tail lamp housing as well as a slight dent on the right rear bumper.

The Gibbs vehicle was east of the Hawthorne driveway and "was sitting on the south shoulder of Route 460 headed west. * * * It was practically demolished from the front all the way back, the entire left side, or the driver's side of the vehicle to the rear." According to Landers, "[t]he distance from the Gibbs' Falcon to the Bridgeforth vehicle after impact was ninety-eight feet. Measuring diagonally from one side of the road to the other, from one vehicle to the other." Landers also said that the Strickland car was parked in the Hawthorne driveway about 4 feet from the highway. It was damaged "very slightly on the right front." There was a dent in the right front bumper guard and in the immediate vicinity of the

right headlamp. The seal beam unit of the right headlamp "was hanging out of the fender by the wires" but was still burning.

Trooper Landers was not able to determine from his investigation "the exact point of impact" of the Bridgeforth and Gibbs vehicles. He stated that he found debris which consisted mostly of glass particles and small metal fragments "scattered from one side of the road to the other, but mostly west of the Hawthorne driveway." He also said: "I found a grease mark that was black grease, looked something like transmission grease, extending from the center of the highway to the extreme south side * * *. This grease spot was slightly east of the intersection of the Hawthorne driveway and Route 460. It was entirely in the eastbound lane of Route 460." The grease mark was 18 to 20 feet east of the Hawthorne driveway and "ended at the point where the Falcon automobile [Gibbs'] was sitting." None of it extended into the westbound lane.

Landers observed "whitish acid stains" in the westbound lane to the west of the driveway. These stains "had the odor of battery acid." They began "a short distance west" of the grease mark and were visible at intervals along the road. Landers did not recall seeing any of the acid stains in the eastbound lane. He testified: "To the best of my recollection the bulk of it [stains] was in the westbound lane over-from the center of the road on over to the right." The stains led "up to the Bridgeforth vehicle when it came to a rest." The battery in the Bridgeforth car was "completely demolished", but the battery in the Gibbs vehicle was not damaged.

The only visible tire mark at the scene mentioned by Landers was "a wide swerve mark" on the north shoulder of the road. It was attributed to the Bridgeforth vehicle and made "sort of a loop, crossing the end of the Hawthorne driveway", but none of it "was on the pavement either before it started on the shoulder or after it ended on the shoulder." The day after the mishap Landers found the left end of a front bumper which had been torn from the Bridgeforth car and also a hub cap missing from it on the south shoulder of the highway in the vicinity of the accident. He stated that the section of the bumper was not "in the highway" on the night of the accident and that he was not able to say how either part came to be at the location where it was found.

While defendant has assigned errors relating to various rulings of the court, we deem it necessary to consider only those assignments which challenge the sufficiency of the evidence to support a verdict for plaintiff.

. Defendant essentially contends that the "primary issue involved" in the case was to determine on which side of the road the accident occurred; that the evidence failed to show, as a matter of law, that his vehicle was outside of its proper lane of travel at the time of the collision, and that the jury's verdict was based upon conjecture, surmise and speculation. Plaintiff, on the other hand, says that the evidence presented questions which were "peculiarly" for the jury to decide and was sufficient to support a finding in his favor.

■ The underlying principles involved here were set forth in *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 130 S.E. 2d 462. We there stated:

"Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff who alleges negligence to produce evidence of preponderating weight from which the jury can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence produced must prove more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover. [Citing authorities.]

"When a defendant is called as an adverse witness the plaintiff is not bound by such of his testimony as is in conflict with evidence introduced by the plaintiff; but the plaintiff is bound by so much of the testimony of the defendant as is clear, reasonable and uncontradicted. [Citing authorities.]

\* \* \* \* \*

"It is true that physical facts are sometimes more convincing than oral testimony (*Early* v. *Mathena, Adm'r*, 203 Va. 330, 335, 124 S.E. 2d 183, 187) but when physical facts are relied upon to overcome oral testimony they must be established by evidence so clearly preponderating that the existence of such facts is unmistakable. [Citing cases.]" 204 Va. at pp. 322, 323.

■ When the foregoing principles of law are applied to the evidence adduced in the case at bar, it becomes apparent that the evidence falls short of being sufficient to support a verdict for plaintiff.

Defendant Bridgeforth was called as an adverse witness by plaintiff. He testified that his vehicle was in its proper lane of travel (westbound); that he saw "a set of headlights * * * coming down my side of the road", and that he attempted to turn to the right in

an effort to avoid the collision but "it was all over." Landers, the investigating officer, stated that Bridgeforth told him that he was on his side of the road and that "he met a vehicle with bright lights coming down his side of the road, and he veered to his right in an attempt to avoid the crash." No witness contradicted this testimony, which was clear and reasonable, and plaintiff was bound by it unless, as he contends, the physical facts overcame the oral testimony.

The evidence shows that the "grease mark", which came from either the broken transmission housing or the ruptured oil pan of the Gibbs car, extended from the center of the highway across the eastbound lane to the Gibbs' car after it came to rest. There was testimony that the transmission housing and oil pan of a 1960 Ford Falcon automobile are located in the center of the vehicle with reference to its two sides. There was also testimony that when these parts are ruptured fluid and oil drop immediately from them. Hence, it can be reasonably argued that the Gibbs car was practically straddling the center of the roadway when the accident occurred.

The fact that stains made by the acid from Bridgeforth's demolished battery were found in his lane of the highway west of the Hawthorne driveway "from the center of the road on over to the right" and led up to his car does not establish with any degree of certainty that Bridgeforth was not in his proper lane when the cars collided. The accident occurred east of the driveway, and the acid stains were found west of it.

The fact that a hub cap and a part of the bumper from Bridgeforth's car were found on the south shoulder of the highway the day after the accident and the fact that debris consisting of glass and metal particles covered the road from one side to the other clearly have no probative value as to the position of the cars when they collided. Neither does the "wide swerve mark" on the north shoulder of the road at the driveway made by Bridgeforth's automobile after the terrific crash established that his vehicle was in or partly in Gibbs' lane of travel when the cars collided. As was said in *Fletcher, Adm'r v. Horn*, 197 Va. 317, 322, 89 S.E. 2d 89, "It is a matter of common knowledge that a motor vehicle, out of control as the result of a collision, may seemingly defy all laws of physics."

Our conclusion is that the physical facts relied upon by plaintiff were not so clearly preponderating that their meaning was unmistakable. Some of the physical facts were of no probative value

while others tended to support Bridgeforth's testimony. Hence, they were not sufficient to overcome it.

Moreover, even if Bridgeforth's testimony be disregarded, plaintiff is left in the position of not carrying the burden of showing where, how and why the accident occurred. The jury's verdict was thus improperly based upon conjecture and speculation.

We find that the evidence was insufficient to support a verdict for plaintiff and that the trial court erred in refusing to strike plaintiff's evidence, to set aside the verdict, and to enter summary judgment for defendant. Accordingly, the judgment appealed from is reversed, the verdict set aside, and final judgment is here entered for defendant.

*Reversed and final judgment.*