# Richmond

GEORGE EDWARD JORDAN v. FRANK TAYLOR, ADMINISTRATOR, ETC.

June 10, 1968.

Record No. 6572.

Present, All the Justices.

William V. Hoyle (*Hoyle and Short*, on brief), for plaintiff in error.

Herbert H. Bateman (*Jones, Blechman, Woltz & Kelly*, on brief), for defendant in error.

SNEAD, J., delivered the opinion of the court.

Frank Taylor, Administrator of the estate of Linda Taylor, plaintiff, instituted an action for damages against Guy L. Smith, Administrator of the estate of Seth Letus Smith, and George Edward Jordan, defendants. The motion for judgment alleged, among other things, that plaintiff's decedent was killed when the automobile in which she was a passenger and being driven by Seth Letus Smith, collided with a vehicle operated by Jordan, and that the collision and the resulting death of plaintiff's decedent were caused by the gross negligence of both Seth Letus Smith and Jordan.

On July 12, 1966, the day the trial commenced, plaintiff was granted a non-suit as to defendant Smith. Defense counsel then moved for a continuance on the ground that a court reporter who had been previously engaged was absent. The reporter had been informed that the case was settled or continued. The court, after hearing argument, overruled the motion. However, the trial judge instructed his secretary to take stenographic notes of the proceedings until a court reporter could be obtained. The trial before a jury proceeded with Jordan as the sole defendant, and he was represented by counsel for two uninsured motorist carriers.

At the conclusion of plaintiff's evidence and again at the close of all of the evidence, defendant moved the court to strike plaintiff's evidence. Both motions were overruled and the case was submitted to the jury. A verdict was returned for the plaintiff in the sum of $35,000. Jordan's motion to set aside the verdict was overruled and

judgment was entered in accordance with the verdict. We granted Jordan a writ of error.

The fatal accident occurred on September 12, 1965, at approximately 6:00 p.m. on U.S. Route 17, two-tenths of a mile south of the Nansemond River Bridge in Nansemond county. At this point Route 17, which runs in a general north-south direction, is a two-lane black top highway with narrow shoulders and shallow ditches on each side. White lines separate the lanes. The road is "generally straight" except for a "medium curve" a "few hundred yards" from the southern end of the bridge. The weather was clear, the sun was shining and the road was dry. The speed limit was 55 miles an hour. The automobiles involved in the collision were a Rambler sedan driven by Seth Letus Smith in which plaintiff's decedent was a passenger and a red Buick sedan operated by Jordan in which Allen C. Joyner was riding.

The evidence was conflicting as to how the collision occurred. Benjamin F. Pierce, a civil engineer, testified that he was driving north on Route 17 toward the Nansemond bridge and at a point about 100 feet south of the curve, he met a red Buick automobile traveling south between 55 and 60 miles an hour. Pierce stated that the Buick "was weaving back and forth on the road", and that he was compelled to drive off the road onto the east or right shoulder to avoid a collision. In spite of this maneuver on his part, Pierce said he "narrowly avoided being struck" by the car. After the Buick passed, Pierce "pulled back" onto the highway, glanced into his rear view mirror, and "almost immediately" he saw it collide with the Smith vehicle which was being driven in a northerly direction. Pierce said that the point of impact was approximately 100 yards south of his vehicle, and that he "believed" the collision occurred on the "edge of the northbound lane and shoulder" of the highway.

After observing the accident, Pierce turned his vehicle around and proceeded to the wrecked cars. He testified that the Rambler automobile came to rest off the east side of the highway on the shoulder facing north and the Buick vehicle was in the highway headed in an easterly direction. On direct examination, Pierce was asked if what he observed at the accident scene was consistent with what he observed through his rear view mirror. Over Jordan's objection, he answered in the affirmative.

Trooper Lewis S. Slade arrived at the scene before either of the cars involved in the head-on collision was moved. He found the

automobiles in practically the same positions as stated by Pierce. Slade testified that the left wheels of Smith's Rambler were located approximately three feet off the eastern edge of the road; that the Buick was partly in the northbound lane and partly on the shoulder of that lane facing east; that the marks on the bank of the ditch indicated that the Rambler had been dragged about 15 feet in a southwesterly direction along the ditch; that the debris was scattered on the northbound lane and shoulder of the highway, and that there were skid marks in the northbound lane, which started about three feet from the center of the road and extended in an easterly direction 36 feet to the shoulder.

Linda Taylor was dead upon arrival at the hospital, and Seth Letus Smith died prior to the institution of this action.

Allen C. Joyner testified that he was riding in the front seat of defendant's car "looking at a little book in my hand"; that he first saw the Smith vehicle when it was about 25 feet away "on the line coming toward us"; that the automobile was occupied by a man and a woman sitting "close together"; that the man was on the right side, and that he (Joyner) was rendered "half unconscious" by the accident.

On cross-examination, Joyner first denied but later admitted that he had previously been convicted of a felony. He denied telling Trooper Slade that "as we came out of the curve, we were running pretty fast". In his rebuttal testimony, Trooper Slade stated that Joyner did make such a statement to him when questioned about the accident.

Jordan, the defendant, testified that he was traveling at a speed of about 40 miles an hour when he first saw the Smith vehicle approaching at a distance of 60 yards, and that it "come on my side down the road and about twenty yards * * * he just like you cutting your wheel to come back and can't, and looked like he was trying to duck back and about the time Joyner said, 'Look out', I hit my brakes." Jordan also stated that he observed a "girl sitting close" to the driver of the Smith car.

On cross-examination Jordan was asked whether he recalled meeting an on-coming car (Pierce) immediately before the accident. He recalled that he had but it passed in a normal manner. Jordan stated that he did not notice the car change its speed or pull over to the shoulder of the highway. When asked why he was driving at a speed of 40 miles an hour in a 55 mile per hour zone, he replied that it was

due to the "heavy traffic" and because he was almost out of gas and was attempting to conserve fuel. Jordan also admitted that he had previously been convicted of a felony.

The defendant makes twenty assignments of error. In his first assignment, Jordan asserts that the trial court erred in refusing to grant a continuance because of the absence of the court reporter who had been engaged by William V. Hoyle, counsel for one of the uninsured motorist carriers defending the suit against him.

The testimony of Pierce and a portion of the testimony of Trooper Slade, as well as the incidents of trial which occurred before a reporter arrived, were reduced to narrative form, signed by Hoyle and counsel for plaintiff and certified by the judge. An additional certificate signed by the judge and attached to the narrative states "that all parties are in agreement that [the] foregoing constitutes an accurate account of the proceedings up to the time the Court Reporter appeared, except as herein below noted:" The exception was that Hoyle recalled that when he renewed his motion for a continuance and moved for a mistrial during the examination of the witness Pierce, the court overruled his motions and stated *in the presence of the jury* that "he did not want to hear any more about the Court Reporter not being present because it was Mr. Hoyle's fault that the Court Reporter was not there to start with". The certificate further states: "The Court refuses to certify that this occurred because there is nothing in the recollection of the counsel for the plaintiff, the recollection of the Court, or does anything appear in the record to substantiate the same. The Court recollects an instance of this nature occurring out of the presence of the Jury."

The trial judge at the conclusion of the testimony stated that his office was responsible for the absence of the court reporter rather than the office of defense counsel as initially believed by the court.

Jordan argues that a reporter had been retained to "protect" the record and to prevent any misunderstanding as to what transpired, and that through no fault of his own the reporter was inadvertently dismissed by some person in the judge's office. He says that the narrative statement is "necessarily generalized" and based upon recollections of parties which are imperfect. Hence, he says that because of inaccuracies in the narrative he was prejudiced by the court's action in refusing a continuance.

"The motion for a continuance is, of course, addressed to the sound discretion of the trial court and whether judicial discretion has been

properly exercised depends upon the factual situation existing, the burden being upon the complaining party, * * * to point out the facts and to lay the finger upon the error." *Wansley* v. *Commonwealth,* 205 Va. 419, 421, 137 S.E.2d 870, 872. See also 4 Mich. Jur., Continuances, § 50, pp. 322, 323 and cases there cited.

Here, the trial court certified that the narrative was "an accurate and detailed account of the evidence and incidents of trial" up to the time a court reporter commenced taking stenographic notes. The court refused to include in the narrative the alleged prejudicial remark blaming Hoyle in the presence of the jury for not having the court reporter present. The court had available stenographic notes taken by its secretary and recalled that the incident occurred out of the presence of the jury. A narrative statement, certified by the trial judge is presumed to be correct. In the absence of proof to the contrary it is binding upon us. *New Bay Shore Corp.* v. *Lewis,* 193 Va. 400, 404, 69 S.E.2d 320, 322. Jordan has not carried his burden of proving that the narrative is incorrect and that he was prejudiced because of the absence of a court reporter at the beginning of the trial. Thus, we cannot say that the court abused its discretion in refusing to grant a continuance.

Jordan next contends that the court erred in permitting the witness Pierce to state an opinion and to draw a conclusion. Pierce first testified that he observed the collision through the rear-view mirror of his car and "believed" but "could not be sure" that the impact occurred "on the edge of the northbound lane and shoulder" of the highway. Then he stated that he went immediately to the scene; that the Smith vehicle was on the shoulder of his lane of travel facing north, and that the Jordan car was in the highway headed in an easterly direction. Following this testimony, Pierce was asked if what he observed at the scene was consistent with what he saw through his rear-view mirror. Over defendant's objection, Pierce answered in the affirmative.

The defendant argues that the answer constituted an opinion on an ultimate fact in issue, invaded the province of the jury, and was inadmissible. On the other hand, plaintiff contends that Pierce was not asked to give an opinion or conclusion; that he was only asked to testify as to the consistency of one observation with another pertinent to the same event, and that in each instance his testimony was based on personal observation. In our view the question was improper as it called for an answer that tended to bolster the credibility of the

witness and the objection to it should have been sustained. However, we regard the error in this particular case as harmless.

■ Over the objection of defendant, Trooper Slade testified that he saw defendant within two hours after the collision in the emergency room of the hospital and smelled "a beerish type of alcohol" about his person. The defendant claims that the court erred in permitting the introduction of this evidence. He points out that this court has held that the mere odor of alcohol on a person's breath is not sufficient to prove intoxication. *Basham* v. *Terry, Administratrix*, 199 Va. 817, 821, 102 S.E. 2d 285, 288.

The record shows that when Trooper Slade could not state whether the odor of alcohol emanated from defendant's breath or his person, the court on its own motion struck his testimony relating to alcohol, and stated to the jury: "You will not consider any odor of alcohol indicating that * * * the Defendant in this case was intoxicated either at the time or subsequent to the collision in question." In addition, the court granted Instruction B tendered by defendant. It reads:

"The Court instructs the jury that there is no evidence of intoxication or use of alcohol by the defendant, George Edward Jordan, and you shall not consider same in your deliberation in arriving at your verdict."

The jury was clearly and emphatically instructed to disregard the testimony in question and we find that no error was committed.

■ Jordan next asserts that the court erred in amending Instruction A. As amended, it reads:

"The Court instructs the jury that the party who alleges negligence must establish it by proof sufficient to satisfy a reasonable and well balanced mind. The evidence must show more than a *possibility* of a negligent act. When liability depends upon carelessness or negligence, right of recovery depends upon the same being shown by competent evidence, and it is encumbent upon the plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment upon mere supposition without a single known fact." (Emphasis added.)

Over defendant's objection, the trial court substituted the italicized word "possibility" for "probability" contained in the tendered instruction. This substitution, defendant argues, changed the meaning of the instruction and reduced the burden of proof placed upon

plaintiff under the decisions of this court. The defendant cites *Norfolk & W. R. Co.* v. *Briggs*, 103 Va. 105, 113, 48 S.E. 521, 524; *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 322, 130 S.E.2d 462, 465; *Bridgeforth* v. *Gibbs, Adm'r*, 207 Va. 127, 132, 148 S.E.2d 763, 766, to support his contention that the correct language to be employed in an instruction describing the degree of proof is: "The evidence produced must prove more than a *probability* of a negligent act." The cited cases do state this principle of law, and the trial court should not have substituted "possibility" for "probability" in the instruction defendant tendered.

However, Instruction No. 5 specifically told the jury that "the plaintiff must prove his case by a preponderance of the evidence." When amended Instruction A is considered along with Instruction No. 5 and other instructions of the court embodying the same principle, we do not find the substitution in the instruction complained of either misleading or prejudicial.

Instruction A as offered by defendant also included this language: "An inference cannot be drawn from a presumption, but must be founded upon some fact legally established." Over defendant's objection the sentence was deleted. Defendant claims this action of the court was erroneous. We do not agree. The sentence correctly stated a principle of law, but it had no application to the facts in the case at bar.

The defendant also complains that the court erred in refusing Instruction E relating to the doctrine of sudden emergency. We find no evidence that Jordan was confronted with a sudden emergency not caused by his own negligence. The defendant's evidence was that the Smith vehicle came on his side of the road and the plaintiff's evidence was that the Jordan vehicle collided with the Smith car in its lane of travel. The doctrine of sudden emergency was not applicable under the evidence adduced, and the court was correct in rejecting the instruction.

Plaintiff's counsel failed to argue the question of damages in his opening summation to the jury. Defense counsel likewise did not discuss damages in their closing argument. In his closing summation, plaintiff's counsel undertook to argue damages two minutes before his allotted time for argument had expired, and the court anticipating an objection from counsel for defendant, directed counsel to retire to chambers. Whereupon, the court reminded counsel for plaintiff that he had not argued damages in his opening summation.

Plaintiff's counsel responded that he was not "aware it had to be done." The trial court stated that "it would be manifestly inequitable in a case of this nature not to allow counsel to argue his damages through inadvertence", and ruled that plaintiff's counsel could have five minutes (including two minutes not used) to argue damages, and that defense counsel could have equal time for reply. Since counsel for defendant did not consume all of the time allotted in their closing argument, they requested the court to allow them the fifteen minutes not used in closing in addition to the five minutes. The request was refused. Because of the court's action in permitting plaintiff's counsel to argue damages, and in refusing defense counsel the time requested to reply thereto, defendant has assigned error.

In 93 A.L.R.2d, 277, 278, it is stated:

"While it is generally recognized that it is improper to permit counsel having the burden of issues in a civil case to argue new matter or points in his closing summation which he did not argue, discuss, or mention in his opening summation, the question of the prejudicial effect of such an argument rests largely in the discretion of the trial judge, and in the absence of an abuse of that discretion the appellate courts will not reverse his decision."

In *Cohen* v. *Power*, 183 Va. 258, 262, 32 S.E.2d 64, 65, we said:

"The trial court has supervisory control over the argument of counsel to prevent an abuse of that right. This power must be exercised with sound judicial discretion and with due consideration to the particular circumstances of each case. This court will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced. (Citing cases.)" See also *Burks* v. *Webb, Administratrix*, 199 Va. 296, 311, 99 S.E.2d 629, 641.

Here, the trial court was of opinion that the failure of plaintiff's counsel to argue damages in his opening summation was inadvertent, and that it would be "manifestly inequitable in a case of this nature" not to allow him to argue this issue in his closing summation. Five minutes were allotted plaintiff's counsel to argue damages and an equal amount of time was given defense counsel to reply. Jordan makes no contention that defense counsel did not have sufficient time to argue damages. His complaint is that defense counsel were not granted all of the time requested. "[T]he time allowed counsel for argument is within the sound discretion of the court, * * *." *Brown, Adm'r* v. *Peters, Adm'r*, 202 Va. 382, 391, 117 S.E.2d 695, 700.

Under the facts and circumstances of this case, we cannot say that the trial court abused its discretion or prejudiced defendant either in permitting plaintiff's counsel to argue damages in his closing summation, or in refusing defense counsel the additional time requested to reply thereto.

In our view, it will unduly prolong this opinion and will serve no good purpose to discuss the remaining assignments of error. Suffice it to say, we find them to be without substance.

Accordingly, the judgment appealed from is

*Affirmed.*