## Richmond

FRANK E. MILLER, ADMINISTRATOR OF THE
ESTATE OF KEITH G. MILLER, DECEASED

v.

SHEDRIC NELSON WHITE

September 11, 1981.

Record No. 791353.

Present: Harrison, Poff, Compton, Thompson, JJ., and Harman, S.J.

*Roger B. Willetts (Edmunds, Willetts & Yount*, on briefs), for appellant.

*James G. Welsh (Timberlake, Smith, Thomas & Moses*, on brief), for appellee.

PER CURIAM.

Frank E. Miller, administrator of the estate of Keith G. Miller (Miller), instituted this action against Shedric Nelson White, alleging that the decedent died as a result of a motor vehicle collision caused by White's negligence. Called as an adverse witness at the trial, White testified he was on his side of the road at the time

of the head-on collision between his car and Miller's motorcycle. At the conclusion of the plaintiff's evidence, the trial court sustained White's motion to strike the plaintiff's evidence on the ground that the plaintiff had failed to produce evidence overcoming White's testimony he was in his proper lane of travel and that *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 130 S.E.2d 462 (1963), consequently precluded submission of the case to the jury. The plaintiff then brought this appeal in which his sole assignment of error is that the trial court erred in striking the plaintiff's evidence.

The accident occurred on August 23, 1977, at about 4:45 p.m. at a point on Route 254 approximately 4.7 miles west of Waynesboro. At this location, Route 254, running east-west, has two lanes divided by two solid yellow lines. Miller, operating a westbound motorcycle, collided head on with White's eastbound automobile. West of the point of collision, eastbound traffic on Route 254 veers slightly to the right. At the point of collision, eastbound traffic travels slightly downhill. The accident occurred on a sunny day, and the road surface was dry. The investigating police officer estimated visibility for both drivers to be approximately 200 feet. The speed limit was 55 miles per hour.

Trooper R. W. Jordan, a member of the Virginia State Police who investigated the accident, offered detailed testimony, supported by numerous photographs, concerning his observations when he arrived at the accident scene. Jordan found White's vehicle, facing westward, in a ditch off the northern side of the westbound lane. Miller's motorcycle, positioned underneath the rear of White's car, was completely demolished. Jordan also noticed four tire skid marks appearing entirely in Miller's lane of travel and leading directly up to White's vehicle. One of these skid marks, the one that led to the automobile's left front tire, measured 61 feet 8 inches in length. All the marks were unbroken except at the edge of the road, where there was a slight dropoff from the road pavement. The configuration of the skid marks indicated that White's vehicle was in a sliding position and was turned slightly to the left at the point where the marks commenced and subsequently turned counterclockwise until coming to rest in the culvert. Jordan observed no tire marks in the eastbound lane and no skid marks which might be attributed to the motorcycle.

Jordan also found two gouge marks in the westbound lane where it "appeared some heavy metal [had come] down on the

road." These marks, approximately 3 inches wide, were located 5 feet 11 inches from the center line and 4 feet 9 inches from the shoulder of the westbound lane and commenced approximately at the same point in the westbound lane as the tire marks. A weak scratch mark in the pavement extended from the point where the gouge mark ended to where the White automobile ran off the pavement. The distance between the gouge marks was approximately the same distance separating the two ends of the motorcycle's roll bar, a metal piece protecting the motorcycle operator's leg in the event the motorcycle goes over on its side. Jordan found "bits of pavement" in the roll bar when he examined the motorcycle. Jordan also testified that, because of debris scattered throughout the road, he could not determine the point of impact.

Upon examining White's automobile, a 1973 Mercury, Jordan noted extensive damage to the left front portion of the car. The left part of the front fender was pushed down on the left front tire. Jordan said it appeared the motorcycle had been ridden into the left portion of the car's front fender and had pushed that section of the fender down onto the tire. The upper left-hand portion of the windshield was shattered, and hair (apparently Miller's) was found in the left-hand corner where chrome meets the windshield.

White, called as an adverse witness, testified that he was employed as a truck driver at the time of the accident. Although he was able only to estimate the amount of driving he had done in the 24 hours preceding the accident, his recollection of events during this period suggests he had driven 14.5 hours in the preceding 24-hour period. White had left his truck in the company's shop and was driving his car home at the time of the accident. Prior to the collision, he was traveling 50 miles per hour. As he crested a hill near the accident scene, he was conscious of the yellow lines dividing the highway and was in the eastbound lane. Although he could not recall being aware of the yellow lines after he crested the hill, he testified he was in the eastbound lane at the time of the collision and "if I had been in my lane and we hit head-on, the motorcycle would have had to have been on my side." White testified that he did not see Miller's motorcycle until "the point of impact" and further, that the motorcycle came out of nowhere. At the point of impact, the motorcycle was upright and traveling westward. White never explicitly testified that Miller's motorcycle had crossed into the eastbound lane before the collision. After im-

pact, White said that "[s]omething came up on the car." He surmised it was either Miller or Miller's motorcycle. White was then thrown into the windshield and could not remember anything further until his vehicle came to rest in the culvert. White was hospitalized and questioned by Jordan shortly after the accident. During the questioning at the hospital, White was asked which side of the road he was on at the time of the collision and responded, "I think I was on my side of the road."

■ The placement of the skid marks left by White's vehicle and the gouge marks, most likely from Miller's motorcycle, supports the inference that the collision occurred in Miller's lane of travel. Admittedly, because White's car was in a sliding position where the skid marks began, reasonable persons reviewing the physical evidence could disagree whether the collision occurred at the point where the skid marks began. Standing alone, however, the physical evidence adduced by the plaintiff would be sufficient to withstand the defendant's motion to strike the plaintiff's evidence. The physical facts adduced by the plaintiff tend to show why, how, and where the collision occurred. On the basis of this physical evidence, a jury, without resorting to conjecture or speculation, could reasonably conclude that White was operating his vehicle on the wrong side of the road at the time of the collision, that White was negligent in doing so, and that his negligence was a proximate cause of the collision. Consequently, this case is quite different from *Bridgeforth* v. *Gibbs, Adm'r*, 207 Va. 127, 148 S.E.2d 763 (1966), and *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 130 S.E.2d 462 (1963), in which fact finders could not have based verdicts for the plaintiffs upon the physical evidence without resorting to conjecture and speculation. In *Bridgeforth*, unlike this case, the physical evidence adduced by the plaintiff failed to provide any insight as to where the collision occurred.

■ White's testimony as an adverse witness that he was in his proper lane of travel is not binding upon the plaintiff. As we noted in *Weddle*, "[w]hen a defendant is called as an adverse witness the plaintiff is not bound by such of his testimony as is in conflict with evidence introduced by the plaintiff." 204 Va. at 322, 130 S.E.2d at 465. From the physical evidence discussed *supra*, a jury could reasonably infer that the collision occurred in Miller's lane. Because this reasonable inference conflicts with White's testimony that he was in his proper lane of travel, this portion of White's testimony is not binding upon the plaintiff.

For the reasons stated, we will reverse the judgment of the court below and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*