## Richmond

ANNIE MARIE P. MCMANAMA, ADMINISTRATRIX, ETC.

v.

VIRGIL E. WILHELM

September 11, 1981.

Record No. 800631.

Present: Carrico, C.J., Cochran, Compton and Stephenson, JJ.

*Beverly C. Read* for appellant.
*James G. Welsh (Timberlake, Smith, Thomas & Moses*, on brief), for appellee.

PER CURIAM.

In this wrongful death action the question on appeal is whether the trial court erred in striking the plaintiff's evidence and entering judgment in favor of the defendant.

Annie Marie P. McManama, Administratrix of the Estate of David W. McManama, deceased, filed a motion for judgment against Virgil E. Wilhelm seeking damages for the death of McManama, a pedestrian, caused when he was struck on August 13, 1977, about 10:30 p.m. by an automobile operated by Wilhelm. The motion for judgment alleged that McManama, lawfully crossing the intersection of Route 60 and Peach Avenue in Buena Vista, was struck when Wilhelm entered the intersection at an excessive speed, without having his vehicle under proper control, without maintaining a proper lookout for pedestrians and without

yielding the right-of-way to pedestrians lawfully crossing the intersection.

At trial, the two investigating officers, Lieutenant J. D. McDaniel and Officer Glenn Reynolds, of the Buena Vista Police Department, testified as witnesses for the plaintiff. McDaniel described the scene of the accident, introduced in evidence a sketch that he had prepared, and identified various photographs of the intersection. Route 60 ran generally east-west, Peach Avenue north-south. Each street was approximately 40 feet wide. In addition to two lanes for east-west traffic, Route 60 had a left-turn lane on the west side of the intersection for eastbound traffic turning north onto Peach Avenue, and a left-turn lane on the east side of the intersection for westbound traffic turning south onto Peach Avenue.

When McDaniel arrived, McManama, who resided several blocks north of Route 60, was lying in the left-turn lane in the center of that street, 27 feet east of the intersection and 14 feet north of the southern curb of Route 60. Two beer cans, one full in a torn paper bag and one empty, were nearby. McDaniel questioned Wilhelm who stated that he had been driving east on Route 60 from Lexington. The officer found one witness at the scene, the Reverend Larry Branham, who had been traveling "directly behind" Wilhelm in a pick-up truck. There were no skid marks, the road was level, dry and had no loose material on it. Wilhelm's car, a 1970 2-door Plymouth, was parked at a 45-degree angle 86 feet east of McManama in a driveway. Wilhelm told McDaniel that he had been driving approximately 20 miles per hour and that he had not seen McManama. McDaniel read into the record the statutory stopping distance of 43 feet for an automobile moving at 20 miles per hour on a level, dry road with no loose material, and 59 feet at 25 miles per hour.

McDaniel found no mechanical defects in Wilhelm's car, but he observed a "small indent" about the size of a quarter on the front edge of the hood approximately six inches to the right of the center. He also saw what appeared to be a fresh "scrub mark" on the northern curb of Route 60 about 20 feet east of McManama. Wilhelm told McDaniel that he had swerved, but did not say whether to the left or the right, and stated that the scrub mark could have been his. The officer did not examine the tires on Wilhelm's car. The car had dual headlights that were in good condition so far as McDaniel knew.

According to McDaniel, there were no traffic lights at the intersection and no markings for pedestrian crossing, but all intersections in Buena Vista were used by pedestrians. Three overhead lights were burning when McDaniel investigated, one at the southeast corner of Peach Avenue, one farther south on Peach, and one on Peach north of the intersection. The speed limit on Route 60 was 25 miles per hour, as shown on a sign posted 428 feet west of the intersection. For at least half of that distance west from the intersection the road was straight.

Reynolds testified that he participated in the investigation, but that his primary duty was to attend McManama, who was severely injured. Reynolds assisted the Rescue Squad in putting compresses on McManama's wounds. They strapped his right arm to prevent it from "coming off." Reynolds corroborated McDaniel's testimony as to the appearance of the accident scene, the place where McManama was lying, the location of Wilhelm's car, and the presence of the two beer cans. The officer testified that he found a glasses case and a shoe in places that he marked on a photograph. The glasses case was in the grass north of the northern curb of Route 60, the shoe was nearby in Route 60.

Although the parties stipulated that McManama died as a result of the injuries received in the accident, substantial evidence was introduced that established the nature and extent of his injuries. Dr. Rahmat M. Seif, a surgeon who treated McManama at Roanoke Memorial Hospital, testified that the patient was "severely injured internally, and also he had broken almost every bone in the body." Dr. Seif said that only an airplane crash would cause more fractures. By the time McManama died at the age of 59, about six months after the accident, his hospital bill was $95,141.25.

There was evidence that McManama had made two oral statements in the hospital. He told his wife that he wished to swear out a criminal warrant against Wilhelm and file a civil action against him. He told his wife's nephew that he had not been drinking on the night of the accident and that he was going to sue "whoever had hit him."

At the conclusion of the plaintiff's evidence, Wilhelm moved to strike the evidence on the grounds that it failed to show primary negligence on the part of Wilhelm and showed that McManama was negligent as a matter of law. The trial court, assuming that McManama was crossing the intersection within a statutory cross-

walk,* ruled that there was insufficient evidence as to excessive speed, lack of control, or lack of lookout by Wilhelm to make a jury issue. The court stated that even if the evidence that Wilhelm did not see McManama were sufficient to establish negligent failure by Wilhelm to maintain a proper lookout, there was "an equal duty" upon McManama to see what was in his vision, and his failure to do so established his contributory negligence. Finally, the court ruled that in the absence of any evidence that Wilhelm saw McManama in time to react, the doctrine of last clear chance would not be available to excuse McManama's negligence in not seeing the approaching vehicle. Accordingly, the trial court granted the motion to strike the plaintiff's evidence and entered judgment in favor of Wilhelm.

We will assume, as did the trial court, that McManama was in a statutory crosswalk. *See Whitting* v. *Doxey*, 217 Va. 482, 230 S.E.2d 251 (1976). Therefore, McManama had the right-of-way and Wilhelm owed him a duty of reasonable care in yielding the right-of-way. However, the pedestrian must exercise reasonable care for his own safety. He cannot arbitrarily assert his right-of-way by crossing in the face of traffic dangerously close. *Phillips* v. *Stewart*, 207 Va. 214, 218, 148 S.E.2d 784, 787 (1966).

The theory of the Administratrix is that McManama stood at the intersection, saw Wilhelm's car approaching, misjudged its speed and thought that he had time to cross Route 60, started to cross where he had the right-of-way, and was struck by Wilhelm's car that was moving at excessive speed. The devastating injuries sustained by McManama, she says, show that Wilhelm was moving at a high rate of speed, and make incredible Wilhelm's statement to Lieutenant McDaniel that he was driving at 20 miles per hour.

The evidence fails to support this theory. The evidence does not show whether McManama was crossing Route 60 from north to south or from south to north, or whether he was standing or running when struck. Indeed, it does not show where he was struck; it only shows where he was found after the collision. From the evidence it is just as likely that McManama suddenly ran into the intersection directly in front of Wilhelm's car, without looking to the west. While some forms of physical evidence may be strong enough to overcome oral testimony, such evidence must be so

* As defined by Va. Code § 46.1-231(a).

clearly preponderating that its meaning is unmistakable. *See Bridgeforth v. Gibbs, Adm'r.*, 207 Va. 127, 133-34, 148 S.E.2d 763, 767 (1966); *Frank E. Miller, Administrator, etc. v. White,* 222 Va. 311, 281 S.E.2d 802 (1981) (this day decided). We are unwilling to hold that the severity of injuries without further evidence is sufficient to establish excessive speed. There were no skid marks laid down by Wilhelm's car, which he parked after the collision 86 feet from where McManama lay. There was no more than insignificant damage to Wilhelm's car, and no evidence that Wilhelm received any injury in the accident.

■ It was the plaintiff's burden to prove the allegations of her motion for judgment and she has failed to do so. She has failed to show how this accident occurred, and in lieu of probative evidence has relied upon speculation, conjecture, and the piling of inference upon inference. *See Elliott v. Anderson,* 208 Va. 753, 760, 160 S.E.2d 775, 780 (1968). Even if Wilhelm was negligent in failing to see McManama, or in losing control of his vehicle, there is no evidence that this was a proximate cause of the accident for there is no evidence that McManama saw Wilhelm's car approaching. Indeed, there is no evidence as to McManama's actions relative to the oncoming car prior to the accident. Thus, in *Weddle, Administratrix v. Draper,* 204 Va. 319, 130 S.E.2d 462 (1963), an intersection case involving two cars, we affirmed the action of the trial court in striking the plaintiff's evidence and entering summary judgment for the defendant. In that case, resolving all inferences in favor of the plaintiff, we held that none of the evidence showed the position of the plaintiff's car "when the defendant's car entered the intersection, the point of collision, and why and how the accident happened. Thus the burden of proof required of the plaintiff to show the negligence . . . of the defendant which was a proximate cause of the accident was not met by this evidence." 204 Va. at 323, 130 S.E.2d at 465. *See Bare v. Jones,* 206 Va. 848, 851, 147 S.E.2d 145, 147 (1966).

■ By failing to show where, when and how McManama entered the intersection, the plaintiff has failed to show that any negligence of Wilhelm was a proximate cause of the accident. Moreover, the doctrine of last clear chance is not applicable. There is no evidence that McManama was helpless or that Wilhelm had a last clear chance to avoid him. *See James v. Union Mission,* 215 Va. 331, 332, 210 S.E.2d 142, 143 (1974); *Vanland-*

*ingham* v. *Vanlandingham,* 212 Va. 856, 858, 188 S.E.2d 96, 98 (1972).

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*