COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff,* AtLee and Ortiz
Argued at Fairfax, Virginia


ESTATE OF SARA A. MCCORKLE, BY
  CHARLOTTE A. SHIREY, EXECUTOR

                                                    MEMORANDUM OPINION** BY
v.        Record No. 0614-23-4                      JUDGE GLEN A. HUFF
                                                    MARCH 11, 2025

ERICKSON SENIOR LIVING, LLC., ET AL.


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Michael F. Devine, Judge[1]

            Jeffrey J. Downey (Law Office of Jeffrey J. Downey, P.C., on brief),
            for appellant.

            R. Michael Trumble (Charles Y. Sipe; Jessica M. Flage; Kiernan
            Trebach LLP, on brief), for appellees.


        Sara A. McCorkle ("Ms. McCorkle")—the plaintiff in the underlying negligence action—

is represented on appeal by her estate (the "appellant").[2]  Despite a favorable jury verdict in the

Circuit Court of Fairfax County (the "trial court"), appellant seeks reversal and remand for a new

trial based on several alleged errors by the trial court.  Chiefly, appellant asserts the trial court

erred in sustaining appellees' demurrer to her claim for punitive damages.  She also challenges

---

        * Judge Huff prepared and the Court adopted the opinion in this case prior to the effective
date of his retirement on December 31, 2024.

        ** This opinion is not designated for publication.  See Code § 17.1-413(A).

        [1] The Honorable David Bernhard presided over hearings in the proceedings below.  Now
a member of this Court, Judge Bernard took no part in this decision.

        [2] Ms. McCorkle passed away during the pendency of this appeal.  Her daughter, Charlotte
A. Shirey, is the executor of Ms. McCorkle's estate.  On August 9, 2024, this Court "granted
Charlotte A. Shirey, Executor of the Estate of Sara McCorkle, to be substituted as the appellant
in this case."

several evidentiary rulings the trial court made as well as its selection of jury instructions. Finding no error, this Court affirms the judgment below.

BACKGROUND[3]

On or about November 25, 2020, Ms. McCorkle's family helped her move into the "assisted living unit" at the Garden Ridge Assisted Living Center (the "living facility") in Springfield, Virginia, that was operated by Greenspring Village, Inc., and Erickson Senior Living, LLC, (collectively, "appellees"). As part of that move, the parties signed an agreement that included a care plan for Ms. McCorkle's needs as an elderly resident with specific physical limitations and dementia. The family advised appellees that Ms. McCorkle "liked to take hot showers and would sometimes get up in the evening or early morning hours to self-bathe or toilet." Appellees assured the family that "assisted living staff could provide for all [of Ms. McCorkle's] daily care needs, including the need for supervision, fall prevention and bathing/toileting assistance."

Over the following few weeks, Ms. McCorkle's family became aware of issues at the living facility involving the supervision of residents, including understaffing of nurses and functionality problems with the call bell assistance system. As a result, the family "continued to retain private duty staff as they were concerned about [Ms. McCorkle's] safety." They also complained to appellees and nurses that Ms. McCorkle was not receiving adequate care, especially as it related to her balance issues and morning shower routine. In a December 8, 2020 email to appellees, Charlotte A. Shirey—Ms. McCorkle's daughter—reported that "there was only one nurse for three hallways[]" and that Ms. McCorkle "had been found naked, in a soiled bed and disheveled room."

---

[3] "According to well settled principles, we recite the relevant facts in the light most favorable to [appellant], . . . the prevailing party in the circuit court." *Agnew v. United Leasing Corp.*, 80 Va. App. 612, 619 (2024) (second alteration in original) (quoting *Nichols Constr. Corp. v. Virginia Mach. Tool Co., LLC*, 276 Va. 81, 84 (2008)).

Ms. Shirey also "informed the direct care staff [at the living facility] about her concerns that her mother was not safe in the facility with the lack of staff."

At approximately 7:00 a.m. on December 21, 2020, Ms. Shirey received a phone call from "a nurse aide" at the living facility who stated that Ms. McCorkle "had been found in the shower" earlier that morning and "was being put back to bed." According to the nurse aide, Ms. McCorkle "had not been injured." In an 11:05 a.m. incident report, the living facility reported that Ms. McCorkle had been "found on the shower floor, with water running. She was assisted back to bed and no injuries were documented by the staff." At 12:21 p.m., however, staff further documented that Ms. McCorkle had "redness to her lower extremities with blisters on her back and chest." The nursing notes said nothing about Ms. McCorkle having "burn injuries" or having been "found under hot water in the shower."

At the family's request, Ms. McCorkle was admitted to the hospital that same day. Like the nursing notes from the living facility, the hospital's discharge papers for Ms. McCorkle made no reference to Ms. McCorkle having been "found under hot water in the shower." Ms. McCorkle's first post-discharge appointment took place at an urgent care office in Waynesboro on December 27, 2020. After noting "burn blisters" on Ms. McCorkle's "left hip and back[,]" the urgent care staff referred Ms. McCorkle to a dermatologist for further treatment.

On January 5, 2021, Ms. Shirey appeared with her mother for a virtual telehealth visit with dermatologist Dr. Shabnam Shahabadi. During that visit, Ms. Shirey relayed the information she had obtained from the living facility about her mother's fall in the shower, including the results of the facility's subsequent test measuring the water temperature at 106 degrees. In her records, Dr. Shahabadi described Ms. McCorkle's skin "as bright red erythema with edema and vesicles (blisters) located on her left thigh and upper back." Dr. Shahabadi also reported in her notes, and later testified to at trial, that the visible injuries to Ms. McCorkle's skin were burn wounds caused

by thermal heat. Based on that conclusion, Dr. Shahabadi prescribed Ms. McCorkle "a topical antibiotic ointment" for treatment.

Around February 22, 2021, the Virginia Department of Social Services ("DSS") opened a "licensing investigation" into Greenspring Village Inc. "for events involving Ms. McCorkle."[4] Based on the results of that investigation, appellees "were cited for various regulatory violations for their failures in the care of Ms. McCorkle." Licensing Inspector Jeannette Zaykowski reported the following findings:

- The living facility "had failed to report the unusual event involving Ms. McCorkle being found unattended in the shower on December 21, 2020." As a result, appellees "had failed to follow regulations for reporting unusual events, in violation of regulations and their own policy on reporting unusual events."
- Appellees "failed to create an appropriate comprehensive individualized service plan ("UAI") that accurately described the needs of the patients, specifically Ms. McCorkle."
- Appellees "failed to ensure that they provided 'supervision of resident schedules, care and activities, including attention to specialized needs, such as fall prevention[,]'" as evidence by Ms. McCorkle's shower incident in 2020.

Appellees "did not dispute the underlying factual findings of the February 22, 2021 survey[]" that "were based on assisted living regulations set forth at 22 VAC 40-73-10 *et seq.*"

Additionally, appellees had received prior citations for other regulatory violations involving incidents unrelated to Ms. McCorkle:

- November 2018 citations "for failing to ensure that care provide[d] and service delivery was resident-centered to the maximum extent possible, failing to assure that residents participated in their service planning, failing to personalize care to the resident's circumstances and failing to provide prompt response to the resident's needs."[5]
- August 2019 citation "for failing to assure that major incidents that negatively affected or threatened the life, health or safety of the resident were reported."[6]
- October 2019 citations for (i) "administrator's failure to assess and properly document whether the admission of a resident with serious cognitive impairment was appropriate"; and (ii) "failing to engage in proper service planning[.]"

---

[4] DSS is the licensing authority for Greenspring Village Inc.

[5] "The specific failure in this inspection involved the facility's failure to timely toilet a resident who needed physical assistance with toileting."

[6] Appellees "failed to report an outbreak of respiratory illnesses within the facility."

- November 2020 citation "for failing to assure that a resident with dementia was evaluated by a psychologist or independent physician before being admitted to the assisted living facility."

Based on all the above information, Ms. McCorkle filed suit against appellees and a third defendant—National Senior Campuses, Inc.—on April 5, 2022, "by and through her Next Friend," Allen D. McCorkle.[7] She ascribed her injuries to appellees' misconduct in four separate counts: "Negligence/Survivorship" (Count I), "Consumer Protection Claims" (Count II),[8] "Punitive Damages" (Count III), and "Breach of Contract" (Count IV). Plaintiff filed an amended complaint on January 5, 2023, to remove National Senior Campuses, Inc., as a named defendant. The amended complaint also included "additional facts supporting Plaintiff's claims[]" that were "disclosed during discovery." Most notably, plaintiff additionally "pled negligence per se, as part of [the] negligence claim[]" "[b]ased on Defendants' admission to various regulatory violations involving Ms. McCorkle."

Appellees filed a demurrer to the amended complaint on January 26, 2023, seeking, in part, dismissal of the punitive damages claim (Count III). Following a hearing on this matter on February 17, 2023, the trial court sustained the demurrer as to Count III.[9] In doing so, the trial court held that "Count III fails to state a cause of action through which Plaintiff could request punitive damages[]" because "[p]unitive damages are not a remedy and cannot be considered a distinct cause of action." The trial court found that, despite "incorporat[ing] the paragraphs from Count I and II[,]" Count III "does not *once* state the underlying remedy Plaintiff employs to

---

[7] Allen McCorkle is Ms. McCorkle's son and had also served as his mother's power of attorney since July 26, 2011.

[8] Alleging violations under the Virginia Consumer Protection Act (VCPA), Code §§ 59.1-196 through -207.

[9] The trial court sustained in part and denied in part other sections of appellees' demurrer but those are not addressed herein because appellant does not challenge those rulings on appeal.

'enforce a right or redress an injury.'" (quoting from *Papadatos v. Kaur*, 109 Va. Cir. 40, 44 (Fairfax Cnty. 2021)). Nor did Count III "clarify whether the Plaintiff is requesting punitive damages under a negligence theory or via the VCPA."[10]

The trial court issued a written order on March 2, 2023, memorializing its findings on appellees' demurrer and granting appellant 21 days to amend. On March 6, 2023, appellant filed objections to that order but did not amend her complaint. Instead, she nonsuited Count II and proceeded to trial on the remaining Counts I and IV for negligence and breach of contract, respectively. Following trial, the jury found in favor of plaintiff on Count I and awarded her $45,000 in compensatory damages against appellees jointly and severally. On Count IV, the jury found in favor of appellees. The trial court entered judgment in accordance with the jury's verdict. This appeal followed.

ANALYSIS

Appellant raises nine assignments of error, which can be grouped into three categories. First, appellant asserts that the trial court erred in sustaining appellees' demurrer to Count III of the amended complaint for punitive damages. Second, appellant argues the trial court erred in determining which instructions to give the jury. Third, appellant challenges several of the trial court's evidentiary rulings relating to either physical exhibits or witness testimony. In her prayer for relief, appellant asks this Court to remand the case "for a new trial on negligence damages, punitive damages, and breach of contract."[11]

---

[10] As the trial court reasoned: "If the former, the allegations of reckless disregard and willful and wanton conduct may be enough to sustain a request for punitive damages. If the latter, the VCPA does not authorize punitive damages; instead, it allows a plaintiff to recover treble damages." *See* Code § 59.1-204(A). Similarly, "[w]hile the Plaintiff explicitly requests treble damages and attorney's fees under the VCPA, this does not clarify whether the Plaintiff is also attempting to recover punitive damages through their VCPA claim."

[11] Despite claiming that the trial court committed reversible error on issues relating to negligence liability, appellant requests that "she not be required to prove negligence a second

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). And "the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)). Nevertheless, this Court does not condone the "blunderbuss approach" to a party's assignments of error on appeal. *Tatusko v. Commonwealth*, 79 Va. App. 721, 729 (2024).

In light of the many claims raised in this case, this Court feels it prudent to remind the parties that appellate counsel is expected to exercise discretion in selecting which issues to present before this Court. *Gray v. Warden of the Sussex I State Prison*, 281 Va. 303, 307 (2011) ("[C]ounsel need not address every possible issue on appeal."). Indeed, it is worth reiterating that "a good lawyer 'need not advance *every* argument, regardless of merit, urged by the appellant . . . and must play the role of an active advocate.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 241 (2022) (alteration in original) (quoting *Fitzgerald v. Bass*, 6 Va. App. 38, 56 (1988)). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *see also Tatusko*, 79 Va. App. at 729. Quite frankly, "if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Jones*, 463 U.S. at 752 (quoting R. Stern, Appellate Practice in the United States 266 (1981)).

For the reasons that follow, this Court affirms the judgment below.

---

time" on a retrial "[s]ince the jury [already] found in favor of Plaintiff on the negligence claim." To the extent these claims are incompatible as to some of appellant's assigned errors this Court refuses to find reversible error on issues relevant *only* to the question of negligence liability, for which she does not seek retrial.

I. Demurrer[12]

In her first assignment of error, appellant alleges that the trial court erred in sustaining appellees' demurrer to Count III of the amended complaint because she "pled a viable claim for punitive damages." This Court first notes that appellant could have easily incorporated her request for punitive damages into her negligence claim, but instead she created a separate count—Count III—that incorporated the facts from both Counts I and II. Appellant even conceded at oral argument that she "probably should not have incorporated Count II into III" because she could not recover punitive damages under the VCPA (Count II). The fact remains, however, that the amended complaint *did* assert a stand-alone claim for punitive damages that relied on allegations of both negligence and violations of the VCPA.

"To survive a challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Hubbard v. Dresser*, 271 Va. 117, 122 (2006) (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967)). "A trial court's decision sustaining a demurrer presents a question of law which we review de novo." *Martin v. Lafountain*, 79 Va. App. 232, 237 (2023) (quoting *Harris v. Kreutzer*, 271 Va. 188, 196 (2006)). In considering the sufficiency of Count III at the time of the sustained demurrer, however, this Court "accept[s] as true all factual allegations expressly pleaded in the [amended] complaint and interpret[s] those allegations in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). Although "allegations of historical fact" are assumed "to be true *arguendo*," this Court will "'not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Coward*, 295 Va. at 359 (quoting *AGCS Marine Ins. v. Arlington Cnty.*, 293 Va. 469, 473 (2017)).

---

[12] Assignment of Error I.

It is well-established that punitive damages in Virginia are a remedy, not an independent cause of action. *See Nestler v. Scarabelli*, 77 Va. App. 440, 467 (2023) ("Generally, 'tort cases require[] an award of actual damages as a prerequisite to an award of punitive damages." (alteration in original) (quoting *Newspaper Pub. Corp. v. Burke*, 216 Va. 800, 805 (1976))). In sustaining appellees' demurrer to Count III, the trial court correctly acknowledged that Virginia law does not recognize an independent claim for punitive damages; rather, a demand for punitive damages must be attached to a viable cause of action, such as negligence. Appellant nevertheless contends that the trial court erred in prioritizing form over substance when making its decision since Count III sufficiency put appellees on notice of the recovery claimed for Ms. McCorkle's injuries. *See* Code § 8.01-275.[13]

"A pleading will be 'upheld as sufficient,'" no matter how informally made, "'where [it is] sufficient in substance to fairly apprise the defendant of the nature of the demand made upon him, and states sufficient facts to enable the court to say that if the facts stated are proved, the plaintiff is entitled to recover.'" *Allison v. Brown*, 293 Va. 617, 627 (2017) (alteration in original) (quoting *Mankin v. Aldridge*, 127 Va. 761, 765 (1920)). This standard is not satisfied merely because appellant raised an individual claim seeking punitive damages; she needed to specify under which cause of action—Count I or II—the requested remedy was attached.[14] The

---

[13] Code § 8.01-275 provides:

> No action or suit shall abate for want of form where the motion for judgment or bill of complaint sets forth sufficient matter of substance for the court to proceed upon the merits of the cause. The court shall not regard any defect or imperfection in the pleading, . . . unless there be omitted something so essential to the action or defense that judgment, according to law and the very right of the cause, cannot be given.

[14] *See Wilkins v. Peninsula Motor Cars*, 266 Va. 558, 562 (2003) (holding that, where complainant sought both punitive damages in tort and treble damages under the VCPA, "[t]he trial court erred in requiring [the plaintiff] to choose between causes of action, when all that was

- 9 -

problem created by appellant's failure to do so is highlighted by the trial court's observation that appellant's "allegations of reckless disregard and willful and wanton conduct *may* be enough to sustain a request for punitive damages[]" under Count I, but that the VCPA permits recovery for treble damages rather than punitive damages. (Emphasis added). *See* Code § 59.1-204(A).

That appellant subsequently nonsuited Count II does not resolve this issue in her favor, especially considering her decision to appeal the matter after trial as opposed to amending the complaint or making a motion for reconsideration. *See Allison*, 293 Va. at 626 ("The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence." (quoting *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141 (1981))). In the absence of either course of action, the trial court was left unable to determine whether appellant had sufficiently pled a claim for punitive damages, even under Virginia's liberal notice-pleading jurisdiction. As such, appellees were deprived of the right "to be told by [their] adversary in plain and explicit language what is h[er] ground of complaint or defense." *Id.* (quoting *Ted Lansing Supply Co.*, 221 Va. at 1141). Consequently, this Court finds no reason to disturb the trial court's dismissal of Count III for failure to state a cognizable claim.

II. Jury Instructions[15]

Appellant asserts that the trial court erred in both denying her proposed jury instructions "supporting Plaintiff's theories of the case" and in granting appellees' Instruction T "that the degree of care can only be determined through expert witness testimony." Appellees dispute that

---

required was supervision of the damage awards to avoid double recovery"); *see also Advanced Marine Enterprises, Inc. v. PRC, Inc.*, 256 Va. 106, 124 (1998) (holding that plaintiff could simultaneously receive statutory treble damages and punitive damages in tort for the same "underlying" conduct, so long as the two categories of damages "were based on separate claims involving different legal duties and injuries").

[15] Assignment of Error IV.

- 10 -

the trial court erred either by granting Instruction T or excluding appellant's proffered Instructions 13, 22, 28, and 28(A).[16] This Court agrees with appellees.

"The purpose of jury instructions is to inform the jury fully and fairly about the law applicable to the particular facts of a case." *Hawthorne v. VanMarter*, 279 Va. 566, 586 (2010). The responsibility to properly instruct the jury "rest[s] in the sound discretion of the trial court." *Holmes v. Commonwealth*, 76 Va. App. 34, 52 (2022) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). Thus, on appeal, "[w]e review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022). In doing so, this Court must ensure "that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* at 674-75 (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)).

---

[16] As proposed below, Instruction 13 stated: "Negligence is the failure to use ordinary care. Ordinary care is the care a reasonable person would have used under the circumstances of this case." Instruction 22 stated: "An assisted facility has the duty to exercise reasonable care and attention for a patient's safety as her mental and physical condition, if known, m[a]y require. If an assisted living facility fails to perform this duty, then it is negligent." Instruction 28 stated:

> In an assisted living facility, an individualized service plan shall be reviewed and updated at least on[c]e every 12 months and as needed for any significant change of a resident's condition.
>
> If a facility fails to update a service plan to address any significant change in condition, then the facility is negligent.

Lastly, Instruction 28A stated:

> An assisted living facility shall have staff adequate in knowledge, skills and abilities and sufficient in numbers to provide services to attain and maintain the physical, mental and psychosocial well being of each resident, as determined by resident assessments and individualized service plans.
>
> If a facility fails to provide such staffing, then it is negligent.

"[I]n deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Holmes*, 76 Va. App. at 53 (quoting *Cooper*, 277 Va. at 381). But "[w]hether the content of the instruction is an accurate statement of the relevant legal principles is a question of law that, like all questions of law, we review de novo." *Hancock-Underwood v. Knight*, 277 Va. 127, 131 (2009). "[A] litigant is [only] entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law." *Id.* at 130 (quoting *Holmes v. Levine*, 273 Va. 150, 159 (2007)). "Instructions are meant to aid the jury in its deliberations, not to make such deliberations more difficult." *Honsinger v. Egan*, 266 Va. 269, 274 (2003) (quoting *Gaalaas v. Morrison*, 233 Va. 148, 156 (1987)). Consequently, "[n]o instruction should be given . . . 'which would be confusing or misleading to the jury.'" *Bista v. Commonwealth*, 76 Va. App. 184, 227 (2022) (alterations in original) (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 708 (2016)).

Furthermore, "[i]n a civil trial, the burden is on the parties to furnish the trial court with proper and appropriate instructions that address their respective theories of the case." *Honsinger*, 266 Va. at 275. As such, "when a proffered instruction is not a correct statement of the law or is not supported by the evidence in the case, the trial court is not required to correct or amend the instruction rather than refusing to grant it." *Id.* Likewise, "[w]here the jury has been sufficiently and correctly instructed on any point, it is not error to refuse further instructions on that point, however correct a tendered instruction may be." *Wilson v. Brown*, 136 Va. 634, 637-38 (1923); *see also Honsinger*, 266 Va. at 274 ("[W]e will approve a trial court's decision to not give an instruction that is duplicative of instructions already given.").

Appellant contends that "the trial court improperly determined that all of Plaintiff's allegations should be considered medical malpractice for purposes of framing the liability issues

to be decided by the Jury."[17] She argues that many of the services provided to Ms. McCorkle did "not constitute medical or nursing care" and that appellees' "failures in providing basic personal services are within the realm of common knowledge." For those allegations, appellant contends the trial court should have instructed the jury on "ordinary care negligence" as a theory of liability that did not require expert testimony.

This Court disagrees, finding no error in the trial court's factual determination that plaintiff's allegations and evidence established only medical malpractice claims "dealing with providing health care" to Ms. McCorkle. Therefore, in giving Instruction T, the trial court properly instructed the jury to "determine the degree of care that was required of the Defendant by considering only the expert testimony on that subject."[18] Generally speaking, "[i]ssues

---

[17] Even had that decision been made in error, appellant is not entitled to a remand on the issue where the jury found in favor of plaintiff on the negligence claim based on properly given instructions supported by the evidence. *See, e.g.*, *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518 (2006). That appellant might have succeeded on an alternate theory of liability, such as negligence per se, is immaterial for purposes of evaluating whether the errors alleged on appeal are reversible or harmless. *Cf. Tashman v. Gibbs*, 263 Va. 65, 68, 76 (2002) (reversing "a judgment in favor of a plaintiff in a medical malpractice action" and remanding "the entire negligence action" for retrial where the Court "cannot say that the evidence and instructions erroneously submitted to the jury on the issue of 'informed consent' did not affect its determination"); *Ponirakis v. Choi*, 262 Va. 119, 121, 126 (2001) (reversing and remanding "a judgment in favor of a defendant in a medical malpractice action" where the Court "[could] not determine from the record whether the jury based its verdict" on the trial court's erroneous "contributory negligence instruction" or "on a determination that [the defendant] was free of primary negligence"). For that same reason, appellant's arguments regarding the trial court's denial of Instructions 28 and 28A must also fail.

Appellant provides no supporting authority for her contrary position. *See* Rule 5A:20(e) (requiring an opening brief to contain "principles of law and authorities . . . relating to each assignment of error"); *Turner v. Commonwealth*, 67 Va. App. 46, 61 (2016) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)).

[18] That the jury found appellees negligent even under this standard entirely undercuts appellant's argument that the trial court committed *reversible* error for failing to instruct the jury that it could use its own common knowledge to determine the applicable standard of care and whether appellees deviated from such. *See, e.g.*, *Jones v. Commonwealth*, 71 Va. App. 70, 91 (2019) ("Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial

involving medical malpractice often fall beyond the realm of common knowledge and experience of a lay jury." *Beverly Enterprises-Virginia Inc. v. Nichols*, 247 Va. 264, 267 (1994). Consequently, "expert testimony is ordinarily necessary to establish the appropriate standard of care, to establish a deviation from the standard, and to establish that such a deviation was the proximate cause of the claimed damages." *Webb v. Smith*, 276 Va. 305, 308 (2008) (quoting *Raines v. Lutz*, 231 Va. 110, 113 (1986)). "Exceptions to this rule exist only in 'those rare cases in which a health care provider's act or omission is clearly negligent within the common knowledge of laymen.'" *Id.* (quoting *Raines*, 231 Va. at 113 n.2).

Appellant claims the trial court should have applied this exception here because appellees' failures—to "timely respond to call bells," to assist Ms. McCorkle in the bathroom— "were within the realm of a jury's common knowledge[.]" Despite construing appellant's argument as a challenge to both the applicable standard of care and the alleged deviations, this Court finds that the exception to the rule requiring expert testimony does not apply to the evidence in this case. Rather, the negligence claims raised here are more akin to those at issue in *Perdieu v. Blackstone Family Practice Center*, 264 Va. 408, 422 (2002), in which the Supreme Court held that the plaintiff "was required to present expert testimony to establish the relevant standard of care" the defendant nursing care facility owed to the injured patient.[19]

---

justice has been reached.'" (alteration in original) (quoting *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017))). This rationale also subsumes appellant's contention that the trial court erred in denying proffered Instructions 28 and 28A, which would have permitted the jury to use "the regulations as the basis for imposing a statutory standard[]" under appellant's negligence per se theory. To that point, the trial court even advised appellant that "it's okay if your expert wants to say [regulations] may inform the standard of care, but it's different than me saying they are the standard of care."

[19] In rendering that decision, the Court expressly noted that the specific negligence alleged by the plaintiff was "of a different nature than the negligence involved in *Beverly Enterprises*." *Perdieu*, 264 Va. at 421.

As here, the plaintiff in *Perdieu* advanced more than one theory of negligence against the nursing home for "failing to implement a care plan that would have prevented [the patient's] falls" and for "failing 'to adhere to applicable standards of care . . . when [it] failed to properly attend, restrain, assist, examine, diagnose and treat' [the patient]." *Id.* (second and third alterations in original). For both theories, the Court held that expert testimony was "required to establish the standard of care[]" because "the appropriate standard of care required by a nursing home to prevent falls by residents" and "for treating nursing home residents[,]" respectively, "is not within the common knowledge or understanding of a jury." *Id.* Like in *Perdieu*, the alleged failure of appellees to address Ms. McCorkle's needs involve matters "beyond the realm of common knowledge and experience of a lay jury." *Beverly*, 247 Va. at 267. Accordingly, because the "rare exception" to the expert testimony rule is inapplicable here, the trial court did not abuse its discretion in granting Instruction T and denying appellant's proposed instructions, which were either inaccurate, misleading, or duplicative.[20]

III. Evidentiary Rulings[21]

In her assignments of error under this category, appellant primarily contends that the trial court erroneously precluded her from presenting certain documentary evidence and witness testimony during trial. These arguments rely heavily on appellant's general claim that her proffered evidence should have been admitted simply because it supported her theory of the case. That is certainly not the standard for admissibility, and appellant fails to explain how the trial

---

[20] In addition to the other reasons discussed herein, this Court finds that the specific content of Instructions 28 and 28A does not constitute an accurate statement of law. Therefore, the trial court did not err in denying those instructions. *See Hancock-Underwood*, 277 Va. at 131; *Honsinger*, 266 Va. at 275.

[21] Assignments of Error II, III, and V-IX.

- 15 -

court abused its discretion by excluding evidence it deemed either irrelevant or otherwise inadmissible under the Rules of Evidence.

"[W]hen a specific objection is made to evidence or when inquiry is made by the trial judge concerning the purpose of evidence, the proponent of the evidence has the burden of establishing its admissibility." *Hicks v. Commonwealth*, 71 Va. App. 255, 276 (2019) (alteration in original) (quoting *Neal v. Commonwealth*, 15 Va. App. 416, 420 (1992)). This Court "reviews the circuit court's decisions regarding the admissibility of evidence for abuse of discretion." *Jones v. Commonwealth*, 71 Va. App. 70, 85 (2019) (citing *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A discretionary decision in which 'the court has a range of choice' will not be reversed 'as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 86 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Calokoh v. Commonwealth*, 76 Va. App. 717, 734 (2023) (quoting *Kenner v. Commonwealth*, 71 Va. App. 279, 289 (2019)).

A. Testimony from Inspector Zaykowski

At trial, appellant sought to introduce expert testimony from Inspector Zaykowski, a "highly qualified, licensed administrator with a nursing degree, who was not retained by either side." Appellant now contends the trial court "erred in failing to qualify Inspector Zaykowski as an expert," thereby improperly "limiting her to the role of a fact witness" and "excluding the factual basis supporting her opinion."[22] She further asserts the trial court erred by excluding Inspector Zaykowski's findings of "multiple regulatory violations committed by Defendants[,]" which either "directly involved the care of Ms. McCorkle" or involved "prior, similar survey

---

[22] Assignment of Error III.

violations."[23]  Of the claims not procedurally defaulted, this Court finds no merit in appellant's arguments.

Like other pieces of evidence, this Court reviews a trial court's decisions regarding the admissibility of expert testimony under the abuse of discretion standard.  *Thorpe v. Commonwealth*, 223 Va. 609, 614 (1982).  Appellant claims that Inspector Zaykowski should have been permitted to testify as an "expert surveyor with specialized knowledge on the regulatory standards."  Appellant reasons that Inspector Zaykowski's "background as a licensed administrator with a BS in nursing and [her experience] having undertaken hundreds of inspections for DSS," qualified her "to render expert opinions on regulatory violations."  In essence, appellant argues the trial court erred in preventing Inspector Zaykowski from offering her expert opinion that appellees' regulatory violations constituted a breach of their duty of care to Ms. McCorkle.

At trial, appellant stated that Inspector Zaykowski's particular area of expertise was "[t]he field of inspecting and assessing assisted living facilities for regulatory compliance."  Although they did not contest her qualifications or her findings of regulatory violations, appellees objected to Inspector Zaykowski being permitted to offer expert opinions: "She was an inspector and she can offer testimony as to what her inspection was and what her findings were, but I don't know that it's appropriate to qualify her as an expert."  The crux of the parties' disagreement was whether Inspector Zaykowski's proffered testimony—that appellees "were not in [regulatory] compliance"—involved matters of opinion or fact.

Ultimately, the trial court found that appellees' violations were "a historical fact[,]" which meant that the witness's testimony addressed "a fact[ual] question."  Accordingly, the trial court ruled that Inspector Zaykowski "is a fact witness and therefore need not be qualified as an

---

[23] Assignment of Error II.

expert to offer [those] opinions."[24]  Appellant thanked the judge and proceeded to elicit the

desired opinion testimony from Inspector Zaykowski:

> Q: [A]s the result of your investigation, did you come to a
> conclusion that a regulatory violation had occurred?
>
> A: Yes. . . . So, 22VAC40-73-460D, that particular violation states:
> Based on record and review and interview, facility failed to ensure
> that the facility shall provide supervision of resident schedules,
> care, activities, including attention to specialized needs, such as
> prevention of falls.  And then it goes on with evidence.
>
> . . . .
>
> Q: The citation that you made about not providing supervision of
> specialized needs, including fall prevention, did that have to do
> with the incident with Ms. McCorkle in the shower?
>
> A: Yes.

Upon review of the record, this Court does not believe that appellant adequately preserved an

objection to the trial court's refusal to qualify Inspector Zaykowski as an expert witness.  *See*

Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an

objection was stated with reasonable certainty at the time of the ruling[.]").  Regardless, this

Court finds that appellant has waived the argument on appeal for her failure to comply with the

requirements of Rule 5A:20(e) in her opening brief, as discussed further below.

Appellant next argues on appeal that the trial court erred in precluding Inspector

Zaykowski "from discussing the underlying factual basis supporting her opinion[s], which

---

[24] Although this Court does not reach the merits of appellant's challenge to that ruling, it notes that Inspector Zaykowski presented the proffered testimony anyway.  The only difference was that her conclusions about the regulatory violations did not officially constitute "expert opinions."  Appellant argues that such distinction "effectively neutralized" Inspector Zaykowski's testimony because the trial court "improperly instructed the jury that in determining the degree of care it could only consider expert witness testimony[.]"  As discussed above in Section II, the trial court did not err in its instructions to the jury.  Accordingly, the proper purpose for which the jury could consider Inspector Zaykowski's testimony was not altered by her status as a fact witness rather than an expert witness.

- 18 -

consisted of chart entries that had already been admitted into evidence[]" as well as statements "from the nursing notes, the UAI and the Plaintiff's Service Plan[,]" which had been "admitted without objection the day before . . . and were discussed by Plaintiff's Administrator/Nurse Expert Susan O'Malley." Appellant argued during trial that Inspector Zaykowski "would be able to give an opinion based on hearsay[]" if the trial court "would allow me to qualify her as an expert[.]" The trial court disagreed, advising appellant that "an expert witness on direct cannot relay the hearsay basis of their opinion."[25]

Appellant responded: "But in this case, all of the information in these records is already in evidence so it's no longer hearsay." The trial court again disagreed: "That's great. That means it would be a harmless error but it would still be an error. This source is hearsay, those sources are not."[26] Appellant now raises that same claim on appeal: "Any hearsay objection was effectively waived when the [underlying] evidence was admitted." That argument, like the one above regarding qualification of Inspector Zaykowski as an expert witness, is waived pursuant to Rule 5A:20.

---

[25] Appellant does not directly challenge that recitation of the law on appeal, nor does she offer any argument as to how hearsay testimony would have been admissible in Inspector Zaykowski's testimony even if she had been qualified as an expert.

[26] Based on the trial court's direction to "reformat" the question, appellant asked Inspector Zaykowski the following:

> Q: The citation that you made about not providing supervision of specialized needs, including fall prevention, did that have to do with the incident with Ms. McCorkle in the shower?"
>
> A: Yes.
>
>    . . . .
>
> Q: And did Greenspring at the time contest . . . the violations that you had given them?
>
> A: Yes.

At a minimum, "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'" *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008) (alteration in original) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)); *see also* Rule 5A:20(e) (requiring appellants to include "principles of law and authorities" in their opening brief "relating to each assignment of error"). "At the risk of stating the obvious, the Rules of the Supreme Court are rules and not suggestions; we expect litigants before this Court to abide by them." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Eaton v. Wash. Cty. Dep't of Soc. Servs.*, 66 Va. App. 317, 320 n.1 (2016)); *see also Parks v. Parks*, 52 Va. App. 663, 664 (2008) (treating "a question presented as waived[]" where appellant's "'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant" (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008))).

Appellant's contention that any witness can testify to all previously admitted hearsay evidence is waived for lack of supporting legal authority in appellant's opening brief. Her claim that "[t]he trial court erred in excluding five of the six survey violations which directly involved the care of Ms. McCorkle" is likewise procedurally defaulted. Although she recites facts relating to each of the five precluded survey findings, appellant provides no legal argument or authority to support her position that the trial court abused its discretion by excluding such evidence for its lack of relevance to Ms. McCorkle's fall in the shower on December 21, 2020 (the "shower incident"). *See, e.g.*, *Turner v. Commonwealth*, 67 Va. App. 46, 61 (2016) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." (quoting *Buchanan*, 14 Va. App. at 56)).

Moreover, whether a specific piece of evidence is relevant—"having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence"—is a factual determination that rests within the sound discretion of the trial court.

*See* Va. R. Evid. 2:401. So too is the necessary factual determination of whether relevant evidence is also "material"—"tend[ing] to prove a matter that is properly at issue in the case." *Commonwealth v. Proffitt*, 292 Va. 626, 634-35 (2016) (quoting *Brugh v. Jones*, 265 Va. 136, 139 (2003)). "While a 'trial court has no discretion to admit clearly inadmissible evidence,' 'a great deal must necessarily be left to the discretion of the court of trial, in determining whether evidence is relevant [and material] to the issue or not.'" *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 529 (2006) (first quoting *Norfolk & Western Ry. Co. v. Puryear*, 250 Va. 559, 563 (1995), and then quoting *Peacock Buick, Inc. v. Durkin*, 221 Va. 1133, 1136 (1981)).

The record here does not establish clear error in the trial court's factual findings; rather, the court's relevance determinations are supported by the evidence as well as the fact that appellant bases her claims for relief on the shower incident.[27] Appellant offers no legal principles under which this Court could find that the trial court abused its discretion in making the factual determination that only certain evidence was relevant to the specific claims brought against appellees.[28] Therefore, this Court cannot say the trial court erred in determining that only

---

[27] Appellant directs this Court to "look to the Amended Complaint to determine what facts are relevant in this case[]" because the trial court "ruled before Plaintiff's punitive damage claim was dismissed." To the extent this Court considers the merits of appellant's argument, it finds that any alleged error relating to the relevance of the survey hearings on Counts II and III would be harmless. Those counts were dismissed prior to trial, and this Court finds no error in that ruling. Accordingly, any evidence relevant only for purposes of proving Counts II or III would not have been permitted at trial once those counts were dismissed.

[28] Appellant merely asserts that "the assisted living regulations . . . set the standard of care in this case." Were that claim true, this Court finds that exclusion of violations unrelated to the shower incident would have been at most harmless error because appellant prevailed on her negligence claim and her breach of contract claim is limited to evidence of the contract between the parties rather than outside regulations merely related to appellees' general operating procedures.

- 21 -

one of Inspector Zaykowski's survey findings was relevant where the other five findings addressed violations unrelated to the shower incident.[29]

This Court also rejects appellant's final assertion that the trial court "erred in excluding prior, similar survey violations[]" not directly involving Ms. McCorkle. The trial court found that such evidence was "not relevant to liability or punitive damages[]" because the prior regulatory violations "are not the type that would put the defendants on notice . . . that their conduct would likely cause an injury" as alleged by appellants. The trial court explained that none of those prior incidents involved injuries "pertinent to the issues that are raised in this case[,]" which stem from the shower incident and Ms. McCorkle's resulting injuries.

Appellant insists that ruling "contradicted a long line of Supreme Court cases which have approved the admission of substantially similar complaints in negligence cases." She specifically argues that the prior survey violations assessed by Inspector Zaykowski were "substantially similar" to those found in "the survey involving Ms. McCorkle."[30] According to appellant, such evidence was "both admissible and probative to prove . . . [appellees'] notice or knowledge of the dangerous condition or defect[.]" This Court disagrees.

To begin, the cases upon which appellant relies address the admission of "substantially similar" evidence only in the context of claims involving defective products. *See, e.g.*, *Funkhouser v. Ford Motor Co.*, 285 Va. 272, 283 (2013) ("Whether it is a products liability claim or a [manufacturer] failure to warn claim, our jurisprudence establishes that the evidentiary test

---

[29] This Court further notes that relevance is not the sole determinant for the admissibility of evidence; not all probative evidence is admissible. Appellant does not address this matter at all.

[30] Whether substantial similarity exists is a fact-specific determination for the trial court to make, to which this Court defers unless plainly wrong. *See Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006) ("[F]actual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them.").

governing the admissibility of evidence relating to prior incidents must be strictly adhered to.").

The Supreme Court stated this rule in its entirety in *Jones v. Ford Motor Co.*, 263 Va. 237 (2002):

> [E]vidence of other similar accidents or occurrences, when relevant, is admissible to show that a defendant had notice and actual knowledge of a defective condition, provided that the prior accidents or occurrences happened under substantially the same circumstances and had been caused by the same or substantially similar defects and dangers as those in issue. . . . [S]uch "evidence is admissible in a products liability case to establish foreseeability and a defendant's duty to a plaintiff." . . . [But] we will not permit the admission of evidence in complaints of similar accidents to corroborate a plaintiff's version of how an accident occurred.

*Id.* at 256-57 (quoting *General Motors Corp. v. Lupica*, 237 Va. 516, 521 (1989)).[31]

Under the existing caselaw, the "substantial similarity" standard is not applicable to appellant's case because her claim hinges on an allegation of general negligence through inadequate provision of service/supervision as opposed to injury caused by a specific defective device or dangerous condition, such as an ineffective non-slip mat or faulty chair in Ms. McCorkle's shower. *See Jones*, 263 Va. at 254 (requiring proof that the cause of the dangerous condition was a defect before attributing knowledge of that condition to the manufacturer); *Lupica*, 237 Va. at 522 (rejecting evidence of a generalized dangerous condition that was not shown to have resulted from a defect in the manufacturer's product).[32]

---

[31] In applying that rule, the Court found no error in the trial court's exclusion of a study containing "unsworn claims of complaints of vehicle malfunction[]" where there was "no evidence that the 2,900 claims mentioned . . . occurred under substantially the same circumstances as the plaintiff's incident and had been caused by the same or similar defects and dangers as those in the plaintiff's case." *Jones*, 263 Va. at 257.

[32] To the extent appellant relies on *Crouse v. Medical Facilities of America*, 86 Va. Cir. 168 (Roanoke 2013), for the proposition that the "substantial similarity" test can be used in the context of ordinary negligence cases, that case has no precedential effect on this Court. Furthermore, the Roanoke Circuit Court recognized that "the 'substantial similarity' standard has been applied principally in cases involving defective products, [and] it is debatable whether the same standard applies to the non-use of a product that is not alleged to be defective." *Id.* at 179. In finding that "the incidents discussed at trial *were* sufficiently similar to Ms. Crouse's situation to provide notice to Defendants that bed alarms were not being properly implemented at other

Even if the "substantial similarity" standard could be considered here, appellant's assigned error still fails. The Supreme Court has explicitly recognized that "[e]vidence of similar accidents" is admissible only "*when relevant*[.]" *Ford Motor Co. v. Phelps*, 239 Va. 272, 276 (1990) (emphasis added). Consequently, appellant's claim of similarity is immaterial here because the trial court found that the prior violations were not *relevant* to proving appellees' liability for the shower incident. For example, "substantially similar" regulatory violations involving the failure to adequately report "major incident[s]" within a specified time has no tendency to prove whether appellees' failure to adequately supervise Ms. McCorkle caused the shower incident. Because the record supports the trial court's factual findings, this Court finds no abuse of discretion in the exclusion of Inspector Zaykowski's irrelevant assessments of appellees' prior violations.

B. Testimony from Dr. Shahabadi

Appellant asserts that the trial court erroneously prevented Dr. Shahabadi—Ms. McCorkle's treating dermatologist—from testifying to "the basis of her opinions that Ms. McCorkle suffered a burn injury, which included medical history" provided by Ms. McCorkle's daughter—Ms. Shirey— as well as "consideration of [Ms. McCorkle's] pain and suffering."[33] Despite acknowledging that Dr. Shahabadi was permitted to "give an opinion about the burn injuries based on her examination" of Ms. McCorkle, appellant assigns error to the trial court's ruling that Dr. Shahabadi "would not be allowed to discuss what was communicated [to her] by Ms. Shirey[]" about how Ms. McCorkle

---

facilities[,]" the Roanoke Circuit Court merely "[a]ssum[ed] the 'substantial similarity' standard applie[d]." *Id.*

Moreover, appellant's statement that "the Supreme Court ratified the *Crouse* verdict[]" is misleading. In "refus[ing] the petition for appeal[,]" the Supreme Court merely determined that "there is no reversible error in the judgment complained of[]" based on "review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal[.]" *Medical Facilities of America v. Crouse*, No. 130838 (Va. Oct. 2, 2013) (order). The Court did not, and has not since, issued any opinion holding that the "substantial similarity" test applies outside of the context of defective products.

[33] Assignment of Error V.

sustained the "burning and painful" burn injury. Appellant argues that such hearsay evidence was admissible under Virginia Rule of Evidence 2:803(4) and was "critical to establishing the link between the shower incident and the burn injury." For the following reasons, this Court finds no error in the trial court's exclusion of the challenged statements.

Hearsay evidence is "testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Jenkins v. Commonwealth*, 254 Va. 333, 338 (1997) (quoting *Stevenson v. Commonwealth*, 218 Va. 462, 465 (1977)).[34] "Expert testimony is frequently based on hearsay factual information, and that is no bar to admission of the expert *opinion* in a civil case." *Bowers v. Huddleston*, 241 Va. 83, 86 (1991) (emphasis added). Code § 8.01-401.1 expressly permits an expert witness to give an *opinion* based on otherwise inadmissible hearsay evidence "without initially disclosing the basis for the opinion[.]" *Swiney v. Overby*, 237 Va. 231, 233 (1989). The statute does *not*, however, give the expert free reign to indiscriminately recite the hearsay evidence itself at trial. *See Commonwealth v. Wynn*, 277 Va. 92, 100 (2009) (holding that Code § 8.01-401.1 does not allow "the introduction of otherwise inadmissible hearsay evidence during the direct examination of an expert witness merely because the expert relied on the hearsay information in formulating an opinion"); *Chapin v. Chapin*, No. 1541-15-4, slip op. at 15, 2017 Va. App. LEXIS 225, at *23 (Aug. 29, 2017) (holding that Code § 8.01-401.1 "does not allow for the admission on direct examination of the actual hearsay statements underlying an expert's opinions").[35]

---

[34] *See also* Va. R. Evid. 2:801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

[35] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Pompell v. Commonwealth*, 80 Va. App. 474, 481 n.7 (2024) (quoting

Therefore, hearsay evidence, even when offered by an expert witness, "is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule[.]" *Campos v. Commonwealth*, 67 Va. App. 690, 705 (2017) (quoting *Godoy v. Commonwealth*, 62 Va. App. 113, 119 (2013)); *see also* Va. R. Evid. 2:802. As pertinent here, Rule 2:803(4) provides one such exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." "[I]mplicit in Virginia's precedent is that there must be sufficient indicia of the statement's reliability for it to fall within the exception." *Campos*, 67 Va. App. at 712. "In sum, for a hearsay statement to be admissible under Virginia Rule 2:803(4), the declarant must make it for purposes of medical diagnosis or treatment, it must fit at least one of the three types of admissible statements and be reasonably pertinent to diagnosis or treatment, and it must be reliable." *Id.*

Here, Dr. Shahabadi's medical diagnosis was that Ms. McCorkle had sustained a burn injury. That conclusion was based on her visual examination of the injury itself, as well as Ms. Shirey's corroborating statements. She then recommended standard treatment methods for such type of injury. The trial court properly admitted such testimony. What the trial court prohibited however, was Dr. Shahabadi acting as a mere conduit to hearsay by repeating Ms. Shirey's statements that (i) Ms. McCorkle "took a fall in the shower on December 21, 2020," at her assisted living facility, and (ii) the water temperature reported by the assisted living facility was 106 degrees.[36] Those statements constituted hearsay-within-hearsay because the information

---

*Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f) (citation of unpublished judicial opinions "permitted as informative").

[36] After Dr. Shahabadi finished testifying at trial, appellant "recalled Ms. Shirey [and] . . . the Court allowed her to explain that she told Dr. Shahabadi that the water temperature was 106°[.]"

Ms. Shirey recited to Dr. Shahabadi came from other hearsay sources, including employees at Ms. McCorkle's living facility.[37]  To be admissible, each instance of hearsay in a single statement "must be justified by an exception"; neither Code § 8.01-401.1 nor Rule 2:803(4) operates as a back door for inadmissible hearsay evidence.  *Warnick v. Commonwealth*, 72 Va. App. 251, 270 (2020); *see also* Va. R. Evid. 2:805.

When the trial court asked appellant for an exception to that second level of hearsay, appellant responded: "I don't know."  Neither below nor on appeal does appellant argue why these statements—provided to Ms. Shirey by her mother's living facility—do not constitute inadmissible hearsay, as determined by the trial court.  "[T]he party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions."  *Campos*, 67 Va. App. at 705 (quoting *Godoy*, 62 Va. App. at 119).  By failing to identify any basis for the admission of that evidence, appellant has waived this specific challenge on appeal.  *See, e.g.*, *Coward*, 295 Va. at 367 ("Lack of an adequate argument on brief in support of an assignment of error constitutes a waiver of that issue." (quoting *Andrews v. Commonwealth*, 280 Va. 231, 252 (2010))).  Accordingly, appellant's claim that Dr. Shahabadi should have been permitted to testify to Ms. Shirey's statements, which contain at least one level of inadmissible hearsay, must fail on the merits.[38]

---

[37] Despite acknowledging that Ms. Shirey's statements constitute hearsay-within-hearsay, appellant does not address on appeal the reliability of the sources upon which Ms. Shirey relied. *See Campos*, 67 Va. App. at 711-12 ("[T]he reason statements made for the purpose of medical diagnosis or treatment are admissible despite their nature as hearsay is that *patients* making such statements recognize that they must provide accurate information to the physician in order to receive effective treatment." (emphasis added)).

[38] On this basis, it is immaterial that the trial court, when precluding Dr. Shahabadi from testifying to Ms. Shirey's statements, also stated: "I still don't think we have anything on whether statements for medical treatment can be made by a third party.  But I've already ruled on that."

Next, this Court finds no error in the trial court's exclusion of testimony about Ms. McCorkle's injuries being "burning and painful." That proffered testimony was based purely on Ms. Shirey's personal assumptions and speculation about her mother's condition.[39] As the trial court noted, appellant did not present any evidence that Ms. McCorkle had communicated those sensations to her daughter, let alone anyone else, either verbally, in writing, or through physical gestures and facial expressions. Because Ms. Shirey's testimony would have relied solely on unsupported conjecture, it was inadmissible to prove either liability or damages. The trial court's decision to preclude that evidence does not constitute an abuse of discretion.

Lastly, appellant criticizes the trial court's ruling that Dr. Shahabadi could not opine that "a water temperature of 106° could cause a burn[]" because that question was not properly designated. That argument falls outside the scope of appellant's assignment of error. Accordingly, this Court will not address the merits of that claim. *See, e.g.*, *Banks v. Commonwealth*, 67 Va. App. 273, 289-90 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant. . . . [W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error.").[40]

---

[39] Appellant does not address this issue directly on appeal; rather, she only claims that such testimony was admissible because "it was being communicated for medical treatment." This argument misses the point: Ms. Shirey's testimony about her mother's pain is inadmissible because of its entirely speculative nature, not because it is hearsay. To the contrary, the proffered testimony is not based on any out-of-court statement or non-verbal assertion made by Ms. McCorkle.

[40] This Court notes that the outcome here remains the same even if appellant had properly raised a successful challenge to the trial court's ruling. "'In Virginia, non-constitutional error is harmless "when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."'" *Campos*, 67 Va. App. at 717 (quoting *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005-06 (1991) (en banc)). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." *Id.* (quoting *Lavinder*, 12 Va. App. at 1006).

As relevant here, designation of an expert witness's opinion does not guarantee the admissibility of such opinion. *Swiney*, 237 Va. at 233 ("Qualification of an expert witness does not

C. Testimony from Dr. Evans

Appellant alleges the trial court erred in permitting Dr. Evans—one of appellees' expert witnesses—"to render undisclosed opinions for which he was neither designated nor qualified to make."[41]  She first argues that the trial court should have limited Dr. Evans's testimony regarding the standard of care because he "was not familiar with nursing or administrated standards and had not been designated to render such opinions."  Appellant then contends that Dr. Evans should not have been allowed "to give alternate causes for Ms. McCorkle's skin injuries after [appellees] agreed not to elicit such opinions because they were never disclosed."  These arguments are procedurally defaulted for appellant's failure to comply with Rule 5A:20(e).

Appellant's opening brief merely recites facts from the record regarding Dr. Evans's testimony and then jumps to unsupported conclusions that such testimony was improper.  *See Davis v. Commonwealth*, 70 Va. App. 722, 738 (2019) (declining to consider appellant's arguments for which he cited only one source and provided no "supporting legal authority").  She neither constructs a clear legal argument nor provides legal authority in support of her broad claim that the trial court abused its discretion in determining the admissibility of Dr. Evans's

---

insure admission of his every statement and opinion.").  Nor does Code § 8.01-401.1 "relieve the court from its responsibility, when proper objection is made, to determine whether the factors required to be included in formulating the opinion were actually utilized."  *Id.*  For example, "[e]xpert testimony is appropriate to assist triers of fact [only] in those areas where a person of normal intelligence and experience cannot make a competent decision."  *Id.*  The expertise Dr. Shahabadi provided here was in dermatological conditions—she diagnosed Ms. McCorkle's skin wound as a thermal burn injury.  Conversely, a determination that 106-degree water can cause a burn on someone's skin is not beyond the ken of the ordinary juror.  In fact, the absence of such opinion from Dr. Shahabadi's testimony clearly did not prevent the jury from reaching a verdict in favor of appellant on her theory of negligence: because of appellees' negligence, Ms. McCorkle fell while taking an unsupervised shower, and the 106-degree water caused her burn injuries.  Accordingly, admission of such evidence would not affect that jury verdict.

[41] Assignment of Error VI.

testimony.[42]  *See Bartley*, 67 Va. App. at 744 (An appellate court "is entitled to have the issues clearly defined and to be cited pertinent authority." (quoting *Jones*, 51 Va. App. at 734)). Appellant's "failure to provide legal argument and authority as required by Rule 5A:20(e) leaves us without a legal prism through which to view [her] alleged error and, therefore, is significant." *Id.* at 746. Accordingly, this Court finds that the allegations of error regarding Dr. Evans's testimony are waived.

D.  Testimony from Nurse Small

In Assignment of Error IX, appellant asserts that the trial court "improperly excluded evidence relevant to Plaintiff's contract and negligence claims" by prohibiting Nurse Marline Small from testifying "to what she would have done had she been informed of Ms. McCorkle's tendency to self-shower in the early morning."[43]  Appellant argues that such testimony "was relevant and

---

[42] "It is well established that the admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion." *Castillo v. Commonwealth*, 70 Va. App. 394, 438 (2019) (quoting *Schmuhl v. Commonwealth*, 69 Va. App. 281, 299 (2018)).

[43] Despite acknowledging that the trial court admitted evidence of appellees' call bell response times, appellant contends that the trial court improperly limited the scope of such evidence to instances involving Ms. McCorkle. According to appellant, evidence showing that the problem of "call bell response delay times were not isolated to Ms. McCorkle . . . would have undercut the defense argument that this was a minor issue unrelated to lack of adequate staffing." Appellant does not, however, elaborate on how the trial court abused its discretion by determining that only the call bell responses specific to Ms. McCorkle were relevant. Nor does appellant provide any legal authority in support of this claim. *See* Rule 5A:20(e) (requiring an appellant's opening brief to contain "principles of law and authorities" for "each assignment of error"). "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" *Parks*, 52 Va. App. at 664 (second alteration in original) (quoting *Jay*, 275 Va. at 520). Accordingly, this particular claim is procedurally defaulted under Rule 5A:20(e) for appellant's significant failure to include "principles of law and authorities."

Appellant further alleges, in Assignment of Error IX, that the trial court "inappropriately questioned witnesses and made comments to the jury that undermined the credibility of Plaintiff's case and her counsel." Appellant did not raise that argument below and has not asked this Court to consider that unpreserved claim under the exceptions to Rule 5A:18, which this Court will not invoke sua sponte. *See* Rule 5A:20(e) (directing that, "[w]hen the assignment of error was not preserved in the trial court, counsel must state [in her opening brief] why the good

admissible to establish that if Nurse Small was given the information she needed to properly monitor and care for Ms. McCorkle, she would have put in place an intervention"— described as "constant rounding"—"designed to prevent [Ms. McCorkle] from injuring herself."  Citing to *Toraish v. Lee*, 293 Va. 262 (2017), appellant claims that Nurse Small's testimony was admissible as "a statement of fact" from a lay witness instead of "an expert opinion" in need to expert qualification.[44]

Generally speaking, a lay witness is "permitted to testify as to any matter upon which he ha[s] 'personal knowledge[,]'" and offer "opinion testimony that [i]s 'reasonably based upon [his] personal experience or observations.'" *Toraish*, 293 Va. at 272 (fourth alteration in original) (first quoting Va. R. Evid. 2:602; and then quoting Va. R. Evid. 2:701).  But "lay witness testimony that amounts only to an opinion of law is inadmissible." *Murray v. Commonwealth*, 71 Va. App. 449, 457 (2020) (quoting Va. R. Evid. 2:701).  "In contrast to lay opinion testimony, '[e]xpert testimony is appropriate to assist triers of fact in those areas where a person of normal intelligence and experience cannot make a competent decision.'" *Id.* (alteration in original) (quoting *Utz v. Commonwealth*, 28 Va. App. 411, 423 (1998)).  Assessing the type of testimony offered and its admissibility lies within the trial court's discretion. *See id.* at 456-57.

In *Toraish*, the Supreme Court affirmed the circuit court's admission of testimony from Dr. Lee that "he would not have recommended surgery had he known about the consanguineous marriage or predeceased siblings[.]"  293 Va. at 272.  The Court found that such statements fell

---

cause and/or ends of justice exceptions to Rule 5A:18 are applicable"); *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).  Accordingly, this issue is procedurally defaulted under Rule 5A:18.

[44] In the interest of judicial economy, this Court assumes without deciding that appellant's argument regarding Nurse Small's proffered testimony sufficiently complies with Rule 5A:20 to warrant review on the merits.

within the ambit of lay witness testimony, rather than expert testimony, because it was "'factual testimony' based upon his personal knowledge of the case[]" and did not address the standard of care.[45] *Id.* at 272-73; *see also Smith v. Irving*, 268 Va. 496, 502 (2004) (distinguishing medical testimony that requires an expert witness from factual medical history that a treating provider may testify about as a lay witness). Highlighting this distinction, the *Toraish* Court noted that Dr. Lee "did not testify that when treating children with [the patient]'s background, a reasonably prudent otolaryngologist should not perform tonsillectomy and adenoidectomy surgery. He simply stated, from his personal knowledge and experience, that *he* would not have done so." *Toraish*, 293 Va. at 273.

Appellant's attempt to analogize Nurse Small's testimony here to that of Dr. Lee's testimony in *Toraish* is unavailing. To begin, Dr. Lee was a named "defendant in a medical malpractice action," whereas Nurse Small "was the night nurse on duty at the time Ms. McCorkle sustained her shower injury." Based on his status in the lawsuit, the Supreme Court held that "Dr. Lee was entitled to give such factual testimony regarding the circumstances that impacted or would have impacted his decision to perform surgery." *Toraish*, 293 Va. at 273. In addition to being characterized as "factual testimony[,]" Dr. Lee's statement was directly relevant to defend against the medical malpractice claim.

The same cannot be said for Nurse Small's testimony, regardless of whether her speculative answer to appellant's hypothetical question constituted a "factual" statement rather than expert opinion testimony. Evidence that does not tend to prove a fact at issue is not

---

[45] The Court nevertheless recognized that "[a] doctor who is a defendant in a medical malpractice case may serve as an expert witness in his defense[,]" including "provid[ing] an 'expert opinion' on whether his treatment of the plaintiff 'demonstrated that degree of skill and diligence employed by a reasonably prudent practitioner in the same field of practice or specialty in Virginia.'" *Toraish*, 293 Va. at 272.

relevant, and non-relevant evidence is not admissible.[46] Appellant claims that Nurse Small's

testimony "went to the heart of causation" because it would have shown that appellees "were

negligent for never informing [her] about Ms. McCorkle's known tendency to try and self-

shower in the early morning hours." But the mere fact that Nurse Small would have

implemented additional safeguards "design[ed] to prevent [Ms. McCorkle] from injuring

herself[]" does *not* equate to evidence that such measures would have succeeded in preventing

Ms. McCorkle's fall in the shower. Without that causal connection, Nurse Small's proffered

testimony was not relevant to the question of appellees' liability. Accordingly, the trial court did

not err in precluding appellant from eliciting the proffered testimony.

### E. Limitation of Cross-Examination

Appellant raises three separate arguments in her claim that the trial court erred by

"restricting the scope and substance of Plaintiff's cross examination of Defendants' experts and

witnesses."[47] First, she claims the trial court abused its discretion by limiting her cross-

examination of Nurse Miller "to only questions that asked if a particular fact affected the

expert's opinion[.]" Second, appellant claims the court erred by precluding her from cross-

examining appellees' expert witnesses about their "own designation[s]." Third, she claims the

trial court erred by precluding her posing hypothetical questions to Nurse Miller during cross-

examination.

"Our courts have 'recognized a fundamental right to cross-examination on a matter

relevant to the litigation[.]'" *McNally v. Va. DMV*, 80 Va. App. 483, 521 (2024) (quoting

---

[46] "It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible." *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013) (quoting *McMillan v. Commonwealth*, 277 Va. 11, 22 (2009)). "The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry*, 61 Va. App. at 509).

[47] Assignment of Error VII.

*Campbell v. Campbell*, 49 Va. App. 498, 504 (2007)). "But once 'the right of cross-examination has been substantially and fairly exercised,' 'the allowance of further cross-examination becomes discretionary with the court.'" *Id.* (quoting *Moore v. Commonwealth*, 202 Va. 667, 669 (1961)). Furthermore, it is well established "that the trial court may appropriately limit cross-examination, subject to the rules of evidence." *Campbell*, 49 Va. App. at 504. In particular, "a trial court may, in its discretion, refuse to allow questions that seek information lacking relevance to any issue before the court, questions that seek to elicit cumulative evidence, or questions that have already been asked and answered." *Id.* at 504-05. Therefore, only "[w]ithin the parameters of the rules of evidence," is the right to cross-examination "'absolute.'" *Id.* at 506 (quoting *Food Lion, Inc. v. Cox*, 257 Va. 449, 450-51 (1999)).

Appellant first argues that the trial court erred in requiring her "to only ask questions about whether certain facts affected the expert's opinions[.]" This is a mischaracterization of the trial court's statement. During the cross-examination of Nurse Miller, appellant "prefaced [her] questions by restating or summarizing evidence already heard by the jury" for the past four days. Eventually, the trial court summoned the parties to the bench to inquire why plaintiff's counsel was "repeating all the evidence this jury has heard for four days."

As part of that discussion, the trial court advised counsel to focus on "whether or not and how it affects this witness's opinion instead of just asking her whether she knows certain facts that the jury has already heard." When appellant complained about this directive, the trial court responded: "Okay[, t]hen don't ask the question." Appellant then resumed her cross-examination of the witness. Despite failing to show how her continued questioning of Nurse Miller was affected by the court's statements, appellant now alleges that the trial court restricted her from effectively cross-examining Nurse Miller.

The record belies that claim. Rather than prohibiting appellant from asking any specific questions, the trial court merely instructed appellant to reframe her questions. "[T]he latitude permissible in cross-examination of witnesses is largely within the sound discretion of the trial court." *Campbell*, 49 Va. App. at 504 (quoting *Basham v. Terry*, 199 Va. 817, 824 (1958)). The purpose of the trial court's directive here was clearly twofold: simplify the questions and don't just restate the facts.

Simplifying the questions, to focus on the relevant points instead of rehashing undisputed facts, would assist appellant in obtaining responsive answers from the witness. It would also reduce confusion among the jury as to what points appellant was trying to make in this "complex case." Similarly, framing questions in the court's suggested manner—how certain facts affected the expert witness's analysis and opinions—would prevent repeated recitations of cumulative facts. Such consideration falls squarely within a trial court's discretionary authority. *See* Va. R. Evid. 2:403(b) ("Relevant evidence may be excluded if [it] . . . is needlessly cumulative."); *Proffitt*, 292 Va. at 640-41 ("Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." (quoting *Massey v. Commonwealth*, 230 Va. 436, 442 (1985))). Accordingly, this Court finds that the trial court did not abuse its discretion by directing appellant to ask properly framed questions during her cross-examination of Nurse Miller.

Regarding appellant's second and third alleged errors, this Court finds both claims procedurally defaulted under Rule 5A:20(e). *See* Rule 5A:20(e) (requiring opening brief to contain "principles of law and authorities"). Appellant asserts that she should have been allowed to question or impeach appellees' witnesses "with their own proffered expert opinions[]" and that the trial court erroneously prevented her from asking Nurse Miller hypothetical questions. Both of those arguments are underdeveloped in the opening brief, and appellant provides no

legal authority in support of them. *See Davis*, 70 Va. App. at 728 (declining to consider appellant's arguments for which he cited only one source and provided no "supporting legal authority"). This failure to comply with the requirements of Rule 5A:20(e) is significant and leaves this Court with no legal framework under which to evaluate the merits of appellant's claim. *See Bartley*, 67 Va. App. at 746; *Parks*, 52 Va. App. at 664. This Court, therefore, considers these arguments waived.

      F. <u>Exclusion of Appellees' "Care Plan Protocol"</u>

      Finally, appellant argues that the trial court erred in sustaining appellees' "relevance objection to the admission of the facility's protocol on care planning."[48] She contends that the "policy was relevant because it set forth the facility's internal practices with respect to care plans[]" and thus "should have been admitted as relevant evidence of Defendants' routine practice."

      Code § 8.01-397.1 provides that evidence "of the routine practice of an organization[] . . . is relevant to prove that the conduct of the . . . organization on a particular occasion was in conformity with the habit or routine practice." Appellant's proffered use of the "protocol on care planning" was the direct opposite of the stated statutory purpose for habit evidence.[49] Appellant further argues that such "[p]olicies and protocols are also admissible to show notice[]" such that "a defendant's departure from 'instruction and training' [constitutes] notice evidence of gross or willful and wanton negligence." The two cases appellant cites—*New Bay Shore Corp. v. Lewis*, 193 Va. 400 (1952), and *Green v. Ingram*, 269 Va. 281 (2005)—do not stand for her sweeping legal proposition and are also factually distinct from the instant matter.

---

[48] Assignment of Error VIII.

[49] Appellant also does not cite to any cases on appeal that support the use of "habit" as a basis for admitting internal company policies.

In *Lewis*, neither party "denied that defendant, for the protection of riders on its merry-go-round, adopted two safety rules[]" that were allegedly not enforced by the defendant's employees. 193 Va. at 408. The Court concluded that those safety rules, and "instructions to [defendant's] employees, clearly indicate[d] that defendant was aware of the potential dangers involved[]" in the operation of a merry-go-round. *Id.* at 409. In *Green*, the Court found "sufficient evidence to constitute a jury question on the issue of gross negligence[]" where an officer on the SWAT team "departed from instruction and training" by firing "frangible rounds into an area [of a locked door] where there was only wood and no metal[]" despite believing there were people on the other side of the door. 269 Va. at 291.

Both of those cases involved employees who did not comply with specific rules that were designed to prevent the type of harm suffered by the plaintiffs. The purpose of introducing such evidence in those cases, however, was not to establish a standard of care, unlike appellant's proposed use of the care protocols in the instant matter. And the admissibility of such evidence was not the issue addressed on appeal in either *Lewis* or *Green*. Consequently, the Court's conclusions in those cases—regarding what inferences from such unchallenged evidence a reasonable factfinder could draw about the defendants' liability—are not applicable to appellant's assignment of error about whether the trial court here abused its discretion in precluding the admission of appellees' internal operating policies.

Furthermore, appellant acknowledges on appeal that, despite the trial court's refusal to admit the care protocol document itself into evidence, "parts of the care plan protocol were discussed by witnesses" during trial. Notwithstanding that admission, appellant claims the trial court should have admitted "the actual document [because it] would have significantly bolstered Plaintiff's case."[50]

---

[50] Once again, that is not the standard this Court applies on appeal when reviewing a trial court's rulings on the admission of evidence. For example, a trial court does not inherently abuse its discretion by excluding evidence that may be relevant but is also needlessly cumulative.

She asserts she would have used that document to confront appellees' witnesses about non-compliance with the stated internal policies, which would show appellees' failure to satisfy their standard of care towards Ms. McCorkle.[51]

That argument contains a series of fatal flaws. To begin, appellant does not explain why she could not effectively cross-examine appellees' witnesses without admission of the protocol document itself. In particular, she provides no rationale or supporting authority for her assertion that admission of the document was necessary for her to impeach any witnesses' contradictory statements about the protocols. Just because she wanted to use the document does not mean the trial court's refusal to admit it into evidence constitutes an abuse of discretion. Moreover, appellant's own statements about her intended use of the document demonstrate why such evidence was inadmissible. The internal policies in the care plan protocol do not set the legal standard of care applicable to this case, and thus cannot prove or disprove the relevant issue of whether appellees violated the standard of care they owed to Ms. McCorkle.

In Virginia, the applicable standard of care in a negligence action is a product of law, not a company's internal rules and policies. *See, e.g.*, *Pullen v. Nickens*, 226 Va. 342 (1983); *Va. Ry. & Power Co. v. Godsey*, 117 Va. 167 (1915).[52] Because "[p]rivate rules may require of employees less or more than is required by law[,] . . . it would be a harsh measure of justice to hold that a plaintiff should be permitted to exact of the company the standard of duty required by such rules."

---

[51] Specifically, appellant contends that (i) "[t]he protocol requiring written changes to the service plan . . . contradicted the defense position that . . . oral huddles were somehow sufficient to meet the standard of care"; and (ii) "admission of the protocol would have contradicted the defense notion that their staff did not have to be familiar with the resident's plan of care[]" in order to satisfy the applicable standard of care.

[52] In *Godsey*, the Supreme Court held "that safety rules of a street car company were inadmissible in evidence in a personal injury action initiated against the company by a passenger[]" because "the rules were intended for the guidance of the company's employees, and . . . there was no evidence that the plaintiff was aware of them[.]" *Pullen*, 226 Va. at 350.

*Godsey*, 117 Va. at 168-69. Indeed, the Supreme Court has unequivocally held that "whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party." *Id.* at 168. In accordance with this principle, the Court explicitly rejected the opposing argument that such evidence is "an admission by the party promulgating the rule that reasonable care requires the exercise of all the precautions therein prescribed." *Id.* at 169. For those same reasons, "[t]he company cannot introduce its rules to show that it has conformed thereto as proof of its freedom from negligence[.]" *Id.* at 168.

Appellant claims that this Court should disregard that precedent, and she cites to *Riverside* in support. In that case, the Court found no error in the admission of a hospital's instructions and training materials where the trial court had determined that such documents were "corroborative of the standard of care set by expert testimony." 272 Va. at 529.[53] In making that determination, however, the Court explicitly found that the "evidence of the staff orientation instruction and nursing curriculum" did not constitute "hospital policies or procedures of the type involved in *Godsey* and *Pullen*." *Id.* The evidence in those cases "involved policies and procedures that employees were expected to follow and as such were described as 'private rules.'" *Id.* The care protocol at issue here falls into that same category of inadmissible "private rules."

Perhaps more importantly, however, the documents admitted in *Riverside* were not offered or used to establish the standard of care. *Id.*[54] "That limitation was repeated during the admission of the evidence and the jury was instructed that the standard of care for [the nurse's] actions could

---

[53] The opposite situation exists in the case at hand, where appellees' expert witnesses testified that the care protocol implemented policies distinct from the standard of care regulations.

[54] "[W]e cannot say the trial court abused its discretion in admitting evidence of Riverside's orientation materials and the nursing school curriculum on high fall-risk assessment and prevention[]" where "the evidence at issue was not offered to establish the standard of care." *Riverside*, 272 Va. at 530.

- 39 -

be established only through expert testimony." *Id.* Additionally, the plaintiff's expert witness "testified that the orientation material and nursing instructions were among the materials she consulted in formulating her opinion on the standard of care." *Id.* Neither of those facts exist in appellant's case. Here, the proper standard was established by the testimony of expert witnesses, none of whom based their opinions on the provisions of appellees' care protocols. Yet, appellant still sought to use the care protocol to challenge the testimony of appellees' witnesses regarding the applicable standard of care. Under these circumstances, this Court cannot say that the trial court abused its discretion in determining that the care protocol document was inadmissible.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*